DAVID ARNOLD *vs.* GEORGE COST.—*December*, 1831.

In an action of slander, it appeared that the defendant had charged the plaintiff with having forged the following instrument, which it was alleged, had been delivered to defendant's slave, to assist his escape: "Know all men by these presents, that the said negro boy was the property of my uncle R,

living near, &c. He died without any heirs ; he never was married, therefore he made all his negroes free, by will and testament. This boy's name is S. He always behaved honestly and industriously; is a good hand about horses, and a good wagoner. The farmers in our part have, for common, all slaves or hands of their own, therefore he wants to try some other part. The commissary's office at F. will prove his freedom. Witness, &c. I. (Seal.)" HELD, upon demurrer, that this instrument, if genuine, might have prejudiced 'I,' by subjecting him to a claim for damages to the owner of any slave to whom it might have been given, or to a criminal prosecution, if such slave absconded ; that it was therefore the subject of forgery at common law, and sustained the action.

It is not now held to be essential to the offence of forgery, in any case, that some one must have been injured. It is sufficient, if the instrument forged, supposing it to be genuine, might have been prejudicial. The question whether a particular instrument is capable of supporting a charge of forgery, is referrible not to the form, but to the substance of it.

ERROR to *Frederick* County Court.

This was an action on the case for *slander*, commenced by *George Cost*, (the appellee,) against *David Arnold*, (the appellant,) on the 27th of January, 1827.

The declaration contained six counts, but a *nolle prosequi* was entered on the fourth, fifth and sixth. The *first* count, after the inducement of good character, proceeded as follows : and whereas also before the committing of the several grievances by the defendant, as in the *first, second* and *third* counts hereinafter mentioned, the defendant was possessed of, and owned a *certain* negro, named *Jerry*, the slave and the property of the defendant, and in his service and employment, to wit, at, &c. to which negro slave, to enable him to escape from the service of his master, (the defendant,) some person unknown to the plaintiff, delivered a a paper written in the following words and figures, to wit :
" Know all man by this present that the said negro boy was the property of my *onkle, Richard Johnson*, living near the mouth of *Monocosa*. He deceased 1821. He died without any *airs*. He never was married. Therefore he *maid* all his negroes free by his will and testament. This boy name is *Sam Waker*. He always behaved *onest*, and *industrust*, and is a good hand about horses, and a good wagoner. The

farmers in our part *has* for common all slaves or hands of their own, therefor he wants to *dry* some other part, the *commossary offis ad Frederick* town will *proof* his freedom, herewith I *haf sat* my hand and seal, *Thomas Johnson* (Seal) near the mouth of *Monocosa, Frederick* county, *Maryland,* date 25th September, 1826 :" and which paper the defendant had often, before the committing of the several grievances by him, as in said *first, second* and *third* counts, hereinafter mentioned, declared, to wit, at, &c., to be a forgery, and not written or signed by the said *Thomas Johnson,* whose name is subscribed to the same : and the said plaintiff further saith, that *David Arnold,* well knowing the premises, but greatly envying, &c. and contriving, and maliciously intending, &c. and to bring him into public scandal, &c. and to cause it to be suspected, &c. that the plaintiff had been, and was guilty of forgery, and to subject him, &c. and also to vex, harrass, &c. heretofore, to wit, on, &c. in a certain discourse which the said *David Arnold,* then and there had in the presence and hearing of one *Henry Koontz,* and of divers good and worthy citizens of this State, he, the defendant, in the presence and hearing of the said *Henry Koontz,* as also of the said last mentioned citizens, falsely and maliciously spoke, and published, of and concerning the said plaintiff, and of and concerning the said paper, and of and concerning the writing and forging the same, the false, scandalous, malicious and defamatory words following, that is to say : "he," (*meaning the plaintiff,*) "wrote it," (*meaning the said paper,*) "and I," (*meaning the said defendant,*) "will swear to it; and I," (*meaning the said defendant,*) "can get others who will swear to it," (*meaning that the said George Cost had wrote and forged said paper, and was guilty of the crime of forgery, and that the said David Arnold would swear to it, and could get other persons who would swear to it.*)

The *second* and *third* counts alleged, that the defendant had charged the plaintiff in the *German* language, setting

out the words and translating them, with the crime of having forged the paper referred to in the first count. There was a general demurrer and joinder.

The County Court overruled the demurrer. The plaintiff then executed a writ of inquiry, at bar, and the court gave judgment for the damages ($700,) found by the jury. Whereupon the defendant sued out the present writ of error.

The cause came on to be argued before BUCHANAN, Ch. J., MARTIN, STEPHEN, and DORSEY, J.

*William Schley,* for apppellant.

The questions in this case, arise upon the demurrer to the *first, second* and *third* counts of the declaration. The demurrer was overruled by the court below. Each count is substantially the same. The *colloquium and inuendo* are alike in all the counts. The demurrer admits the *facts* alleged; but not the conclusion of law. If the antecedent matter does not warrant the *inuendo,* then the *truth* of the *inuendo* is not confessed by the demurrer to raise an issue in law upon the propriety of the *inuendo,* but is directly put in issue. The office of the demurrer is in reference to the antecedent matter. To show the nature and office of the *inuendo,* he referred to 1 *Saund. Rep.* 243 (*n.* 4.) *Holt vs. Schofield,* 6 *Term Rep.* 694. *Stark. on Sland.* 293. *Sheely vs. Biggs,* 2 *Harr. and Johns.* 364. The words in this case not being actionable *per se,* an inducement was indispensable, and a *colloquium;* but the words must be construed *secundum subjectam materiam,* and their meaning cannot be extended beyond their legal sense, as applied to the occasion on which they were used, and the subject matter to which they referred. 4 *Coke's Rep.* 20. 1 *Chitty's Plea.* 194. *Stark on Sland.* 87. If it were otherwise, a demurrer could never be succesfully interposed, in an action of slander; because the pleader, in every instance, would give himself a cause of action by the scope of his *inuendo,* although the antecedent matter should disclose no legal

injury. No *special* damage is averred; and the plaintiff can only recover, if the charge imputes *a crime*, involving moral turpitude, or for the commission of which, he would be obnoxious to some infamous punishment. *Stark on Sland.* 19, (*n.* 1.) *Stanfield vs. Boyer,* 6 *Harr. and Johns.* 248. The charge, at least, must be of such a scandalous nature, as would necessarily tend to the degradation of the individual in society. *Button vs. Heyward,* 8 *Mod.* 24. He recurred to the *count,* and stated the averments to be, that some person (other than Johnson, whose name is thereto signed,) wrote the paper hereinbefore set forth, and gave it to defendant's slave, *with a view* to enable him to escape; that defendant spoke of said paper as a *forged instrument;* and maliciously charged the plaintiff with having written said paper. There is no averment, that the defendant's slave did escape; much less, that he escaped *by means of said paper.* He insisted that the defendants having called the instrument *a forged instrument,* was immaterial; unless the false making of such an instrument would amount, in law, to forgery: as where the words used were, "you are a thief;" and it appeared that the words were used in reference to an act, which amounted, in law, to a mere *trespass,* it was decided that the words were not actionable. *Dexter vs. Taber,* 12 *John Rep.* 239. 1 *Starkie's Rep.* 67. He also referred, on this point, to 4 *Coke's Rep.* 12, 13. He contended that the paper was not such an *instrument,* as could be the subject of forgery, either under any act of assembly, or at common law. It is not the false making of every writing that will amount to forgery; if it be merely frivolous; of no validity upon its face, nor having the semblance of an effective paper: if it be a writing that could not, if genuine, prejudice another's right, although it be made *malo animo,* the maker, however culpable in morals, is not guilty of the crime of forgery. The counterfeit instrument must be such, that if genuine, it would avail to invest some one with a right, or to divest a right, or to charge some one with a responsibility; it must be such an instrument "as purports on the face of it, to be

good and valid, for the purposes for which it was created."
4 *Com.* 247. 1 *Leach's Cases,* 117. (*Sterling's Case.*)
2 *East's Pleas, Cr.* 860.

1. It is not a forgery, under any act of assembly. It
purports to be a certificate of freedom. By the act of 1805,
*ch.* 66, *sec.* 3, the counterfeiting a certificate is indictable;
but this paper has none of the legal attributes of a certificate
of freedom. A *valid* certificate of freedom can only be
given by a county clerk, or a register of wills, under the
seals of their respective offices; it must contain a *descriptio
personæ* of the party; his height, notable marks, &c. This
instrument purports to be given by a *private* individual; it
is not under *seal;* it contains no description of the person.
If genuine, would it be valid as a certificate of freedom?
Could the party, who made this paper, be indicted, under
this act, for counterfeiting *a certificate of freedom?* He
could not; because it would be wholly wanting in the
requisite formalities. *Wall's case,* 2 *East.* 953. *S. C.*
2 *Russell,* 349. *Moffat's case,* 2 *East.* 954. 2 *Russ.*
348. It is not contended, that it would not be forgery,
*merely* because, if genuine, it would be *invalid*—it is suffi-
cient, if it have the *semblance* of a genuine instrument. If,
for instance, *Johnson's* name was signed *as Register,* the
paper in so far, would have borne the semblance of a valid
certificate, although, in fact, he was not such officer. The
objection would have been *collateral;* not apparent on the
face of the instrument. Such was the case of the protec-
tion in the name of *A. B.* as a member of Parliament, when
he was not such in fact. *Deakin's case,* 1 *Sid.* 142. The
will of a living person—*Sterling's case,* 2 *Russ.* 340. The
order of a discharged seaman—*McIntosh's case,* 2 *Russ.* 345.
He also referred to cases of unstamped promissory notes,
which cannot be recovered in an action at law, but the false
making of which, it is admitted is forgery. *Hawkeswood's
case, and Morton's case,* 2 *Russ.* 340. But an unstamped
paper is not merely void: it may be received in evidence
for many collateral purposes. 3 *Starkie's Ev.* 1383. This

paper is within none of these qualifications to the position, first assumed. Again—by the act of 1796, *ch.* 67, *sec.* 19, any person who shall give *a pass* to another's slave, is indictable. *A pass* is a license by a master to *a slave.* This paper does not purport to be signed by *a master;* nor does it state the bearer to be *a slave.* The person who falsely made this paper, could no more be indicted under the act of 1796, for giving *a pass* to defendant's slave, than he could under the act of 1805, for counterfeiting *a certificate of freedom.*

2. At common law the paper has no validity *per se.* If genuine, it could not, *proprio vigore,* destroy *Arnold's* claim to his slave. If the slave had been apprehended as a runaway, this paper would not have entitled him to his discharge on *habeas corpus.* It may be said, it might have *facilitated* his escape. This is not a *test* of forgery ; it would be a consequential, and not a direct effect of the paper : the same result might be predicated of any other writing. If the negro did escape, *and by means of this paper,* then *Arnold* would have had his special action on the case against the party giving it, not merely for the *making* such a paper, or for *giving* it to his slave, *but for enticing him to run away.* 1796, *ch.* 67, *sec.* 19. *Duvall vs. State,* 6 *Harr. and Johns.* 9. If defendant had charged plaintiff *with enticing his slave to run away,* he would have uttered a slander, because he would have imputed to him an indictable act. But the plaintiff's action, in such case, would have been, because of *his* substantive charge, although the defendant may have referred to the paper as the *means* used by the plaintiff; and not for a supposed imputation of forgery. He referred to the case of the *People vs. Shall,* 9 *Cowen,* 778, as strongly in point.

*Palmer,* for the appellee. 1. Every thing which is well pleaded, is admitted by the demurrer. The matters contained in the *colloquium* and *inuendo,* are to be considered together. 1 *Chitty's Plead.* 381. *Hawkes vs. Hawkey,* 8

*East.* 431. *Roberts vs. Camden,* 9 *ib.* 93. *Rex vs. Horn, Cowp.* 678, 684. 2 *Saund. Pl. and Ev.* 365. The demurrer admits the forgery of the paper, and that it was intended to work a fraud, these things being charged in the declaration. 2. But the paper *per se,* is the subject of forgery at the common law, as an injury *might* have resulted from it, which is the true criterion for determining the question of forgery. *Chitty Crim. Law,* 1022. The object and design of the paper, was to facilitate the escape of the slave to whom it was given, and if capable of producing that effect, it is clearly the subject of forgery. *Rex vs. Ward,* 2 *L. Ray.* 1461. *Chitty Crim. Law,* 1023. *East's Cro. Law,* 862. 2 *Greenleaf Rep.* 365. That the paper was calculated to aid the slave in his escape, he insisted there could be no doubt; and if so, then according to the above authorities, it was manifestly an instrument of which forgery might be committed.

*F. A. Schley,* on the same side, having referred to the declaration, contended that the demurrer admits all that the jury could have found. The jury are to find the speaking of the words, and the intent and meaning of them, and whether the defendant meant by them, to charge the plaintiff with forgery. *The King vs. Watson,* 2 *Term. Rep.* 206. *Starkie on Slander,* 54, 55. *Goodrich vs. Woolcott,* 3 *Cowen Rep.* 239. By the inducement, the *colloquium* and the inuendoes, the extrinsic facts, incorporated as it were, in the defendant's publication, become *an integral* part of the plaintiffs case, and *the whole forms one entire slanderous charge, upon the face of the record. Starkie on Slander,* 290. It is not necessary, in order to render words actionable, that there should be *certainty* in stating the *crime* imputed, as in an *indictment* for the crime. *Miller vs. Miller,* 8 *Johns.* 59. *Niven vs. Munn,* 13 *Johns.* 48. *Gibbs vs. Dewey,* 5 *Cowen,* 505.

With these principles in view, let us ascertain whether the crime of *forgery* is sufficiently charged in the declara-

tion. It is urged by the appellant's counsel, that it is not; because the paper, if genuine, is not such an *instrument* as is known to the law, and of which forgery could be committed. That it does not appear on the face of it, or in its form, to be good and available for any purpose : that it is not a certificate of freedom, nor a pass: that it is a mere idle piece of writing, which, if genuine, would have no legal validity, and could not *proprio vigore,* work an injury. To test the correctness of these objections, it is only necessary to ascertain the correct definition of forgery. *Chitty,* in his treatise on criminal law, says that forgery is the false making of such *writings,* as either at common law, or by statute, are its objects, *with intent* to defraud another. 2 *Chitty's Crim. Law,* 1022. In *Coogan's* case, 2 *East's Crim. Law,* 949, *Buller,* justice, defines forgery to be "*the making a false instrument, with intent to deceive."* *Blackstone,* 4 *Com.* 247, says that forgery is the fraudulent making or alteration of a writing, to the prejudice of another's rights. 1 *Hawk.* 537. *East* in his crown law, 2*d,* 852, defines forgery to be the false making of any written instrument, for the purpose of fraud and deceit ; and it may be committed in respect of *any writing whatever.* 2 *Chitty Crim. Law,* 1022. And *Russell,* the latest writer on crimes, after a careful examination of all the authorities, and particularly of the two leading cases of the *The King vs. Ward,* 2 *L. Ray,* 1461, and *Fawcett's* case, 2 *East's Cro. Law,* says it is set down as the settled rule now, "*that the counterfeiting of any writing, with a fraudulent intent, whereby another may be prejudiced, is forgery at common law.* 2 *Russell on Crimes,* 349, 350. In all cases of forgery, it is immaterial whether any person be *actually injured* or *not,* provided any one *may be* injured by it. It is sufficient if the party *might* be injured or prejudiced by it. 2 *L. Ray.* 1466. 2 *East's Crim. Law,* 854, 860, 861, 862. *A possibility of prejudice is enough.* 2 *Strange,* 749. It is sufficient if the writing is *calculated to impose* on mankind *in general,* although an individual *skilled* in that kind of

writings would detect its *fallacy.* 2 *Chitty's Cro. Law* 1039. The only inquiry then, is, whether the paper set forth in the declaration, had, under the circumstances detailed, a capacity to work an injury, or a prejudice to any person. For, if it had, it is the subject of forgery at common law, though no injury did actually occur. The services of a slave are presumed to be valuable to his master: he has an absolute property in him; to induce such slave, or enable him to escape from his master, is to *prejudice* the rights of the master. By the *act of* 1796, *ch.* 67, *sec.* 19, any person who shall be convicted of giving a pass to any slave, or shall assist by advice, *or by any other unlawful means,* in depriving a master of the services of his slave, such person shall be liable to an action for damages at the suit of the master; and on conviction, on indictment, shall pay a fine. The *paper* in this case was well calculated to induce and enable the slave to escape from his master. It was addressed to the public at large—"Know all men, &c." It represented the bearer to be a free man, &c. This paper not only had the capacity, but was well calculated to effectuate the injury to the master, it was designed to effect. If the negro had actually escaped from his master, with this paper in his possession, would it not have been *a means* of facilitating that escape? would not many persons in the country, on being shown that paper by him, have suffered him to pass on; might it not have imposed on many? It stated facts, well calculated to deceive the great majority of persons to whom it would probably have been shown; it might thus have worked an injury to the right of the defendant, by enabling his slave to escape. This paper, with this capacity to prejudice the rights of the defendant, he charged the plaintiff with having written, and placed into the hands of his slave, to enable him to escape out of his service. That is, he charged the plaintiff with having made *a false writing,* which *might* have prejudiced his rights: and this is forgery. *Johnson,* whose name is to the paper, might have been prejudiced by it. Suppose

he had written it and placed it into the hands of the defendant's negro, to enable him to escape from his master, and he had escaped, could not the defendant, on hearing these facts, have recovered damages from *Johnson*, for the loss of his negro's services ; or have indicted him under the act of 1796. Beyond all question he could, for such a case would be strictly and fully within the statute, according to the case of the *State vs. Duvall*, 6 *Harr. and Johns.* 9. But suppose that *Johnson* did not write the paper, and that as asserted by the defendant, *Cost*, the plaintiff, did, and put *Johnson's* name to it, and placed it in the hands of the defendant's negro, to enable him to escape, and he had escaped from the defendant's service ; and when apprehended, this paper had been found in his possession, and the defendant could have proved these facts on the plaintiff, can there be a doubt that he could have recovered damages against *Cost*, or that *Cost* might have been indicted under the act of 1796? If so, then the paper must be a forgery, because it is a paper falsely made, and might have operated, or been used, to the prejudice of the master, to the prejudice of *Johnson*, or to the prejudice of *Cost*. It comes fully within the definitions of forgery. That the injury did not occur, is immaterial in forgery ; it is sufficient if an injury or prejudice *might* have been produced. In this case, however, the defendant has, by his demurrer, admitted that the negro did escape, for in the *colloquium* it is stated, that the defendant "in speaking of *the escape* of the negro out of his service," spoke the words charged. Now, he could not have spoken of his escape, if he had not escaped ; and thus he has admitted that an escape did take place. The cases cited by the appellant's counsel, to show that forgery could not be committed of such a paper as the one set forth in the declaration, are cases arising under particular and highly penal statutes, where the parties were indicted for forging certain instruments, known to the law, and particularly specified in the statutes under which the indictments were framed. In bringing cases within the statute, great particularity is

necessary: the *instrument* forged must not only be called by the *term* used by the legislature, but also set forth that the court may judge whether it properly comes *within the denomination ascribed to it.* 2 *Chitty's Crim. Law*, 802, 1042. 2 *East's Cro. Law*, 983, 985. *Wall's case* was for forging a will of land. This case was under the statute: the words of the statute are, "shall forge a will of land ;" it must, therefore, appear to have been *the very instrument charged in the indictment*, and meant by the statute: and there being but *two* witnesses, it was no will, and was not embraced by the statute. 2 *East's Cro. Law*, 953, 954, 983. *Moffat's case* was for forging a bill of exchange: it was an indictment under the statute ; the instrument proved was *not a bill of exchange*, and therefore the case was not brought within the statute. The same remark may be made of all the other cases cited by the appellant's counsel. The cases of *Crook, McIntosh, Hawkswood, Morton, Teague*, were cases of prosecutions under particular statutes. *Burke's case* was the only case at common law ; and that turned on the point that the instrument was charged in the indictment, *as a promissory note*, and it turned out *in proof*, not to be a promissory note: the *allegata and probata* did not correspond, and on that ground the judges decided the case. The case relied upon by the appellant's counsel, in 9 *Cowen*, was a mere *nisi prius decision* of a circuit judge, and is of no more authority, nor even entitled to as much weight, as the court whose decision this court is now called on to revise. Besides, *Cowen* himself admits, that if the paper in that case could have furnished *the foundation of a liability*, it would have been forgery. The case in 2 *Greenleaf*, 365, sustains throughout, the doctrine in *Ward's* and *Fawcett's case ;* "that the forging *of any writing* by which a person *might* be prejudiced, is forgery."

*Ross*, in reply. The *inuendo* is merely explanatory of the facts contained in the indictment, and cannot be viewed as introducing new facts. Forgery can only be committed

of a paper which may be prejudicial to the party whose name it bears. *Russell on Crimes*, 353. An instrument capable of forgery, must be one which creates or discharges a right, or gives rise to a liability, such as a receipt, bond, or note : but in this case, *Johnson*, whose name is signed to the paper, cannot be subjected by it to any responsibility, nor could his rights, if it were genuine, be in any respect affected by it. A paper of which forgery may be perpetrated, must *per se*, if genuine, be capable of working an injury; it is not sufficient that it may become injurious by extrinsic circumstances. *People vs. Shall*, 9 *Cowen*, 778.

BUCHANAN, Ch. J., delivered the opinion of the court.

It is unnecessary, and would be a waste of time, to enter upon an inquiry into the grounds of the doubts, that at one time seem to have been entertained, in relation to what instruments were, and what were not, susceptible of the crime of forgery at common law. The difficulties that surrounded the question of forgery or not, have been removed by decisions of acknowledged authority ; and it is not now held to be essential to the offence of forgery in any one case, that some one must have been injured. The inquiry is not whether any one has been actually injured, but whether any one might have been prejudiced. In *Ward's* case, 2d *Ld. Ray.* 1461, which was an information for forging an order to charge certain goods to account, and to appropriate part of the proceeds to the defendant's own use, with intent to defraud, &c.; the subject was fully considered. It did not appear, that the person in whose name the order was drawn, had received any prejudice; but it was held to be immaterial to the offence of forgery, whether any person had been actually prejudiced or not, provided any person might have been injured by it ; and that the counterfeiting of any writing, with a fraudulent intent, whereby another may be prejudiced, is forgery at common law—*2d East's Cro. Law*, 854, 860, 161, 862. *Russell on Crimes*, 351, 352. In *2d Chitty's Crim. Law*, 780, 1022, forgery is defined to be, "The false making, or alteration of such

writings, as either at common law, or by statute, are its objects, with intent to defraud another;" in *Coogan's* case, *2d East's Cro. Law*, 853, by Justice *Buller*, " the making of a false instrument with intent to deceive," and in *2d East's Cro. Law*, 852, "the false making of any written instrument, for the purpose of fraud, and deceit," as resulting from all the authorities, ancient and modern, taken together. *Chitty*, in his treatise on *Criminal Law*, 2d vol. 781, 1022, considers it as settled by *Ward's* case, that "forgery at common law might be committed in respect of any writing whatever, by which another might be defrauded;" and in 781, 1023, speaking of *Ward's* case, and the case of *Fawcet*, to be found in *2d East's Pls. Cro.* 862, he says: "Every kind of writing seems, on the doctrine of those cases, to be a thing, in respect of which, forgery at common law may be committed." Hence, it would seem to be settled, that the question, whether a particular instrument is capable of supporting a charge for forgery, is referable not to the form, but to the substance of it, and to be determined alone by that criterion; the chief ingredients of that offence being fraud, and an intention to deceive; to which the principle on which the case of the *People vs. Shall*, 9 *Cowen*, 778, cited in behalf of the appellant was decided, is not opposed. The court there, having gone on the ground that the instrument on the face of the indictment appeared to be one, which, if genuine, would, have been void; and therefore, an instrument, by which no one could have been prejudiced. Applying then as a test, the principle established in the cases of *Ward* and *Fawcett*, and recognized and adopted by the elementary writers to this, and assuming the position laid down in *3d Term. Rep.* 176, and *2d Chitty's Crim. Law*, 796, 1036, "that it is not necessary to constitute forgery, that there should be an intent to defraud any particular person, but that a general intent to defraud will suffice:" is the instrument in question, a forgery at common law? which is answered by the solution of another question; could any person have been prejudiced by it? of which there can, we think, be no doubt.

The appellant, who was the owner of the negro man to whom that paper was given, might have been prejudiced by the absconding of his servant, whose escape it might have facilitated. It was calculated to deceive and impose upon most who might see it, and there were few, if any, by whom he was unknown, who would not, on the production of it, have suffered him to proceed. Who can doubt that such a paper, put in the hands of a negro, and purporting to be signed by one or more respectable men known in the community, would be his sufficient passport, by means of which, he would be able to effect his escape from the service of his owner? And *Johnson* also, whose name is subscribed to that paper, might have been prejudiced; for, if it had been genuine, that is, if he had written it, and given it to the appellant's negro, who had thereby effected his escape, it is perfectly clear, that he would not only have been liable to an action for damages by the owner, but also to a criminal prosecution under the act of 1796, *ch.* 67, *sec.* 19, according to the case of *Duvall vs. the State*, 6 *Harr. and Johns.* 9; which act provides against the depriving an owner of the services of his slave by any unlawful means; which the furnishing a slave with such a paper, by means whereof he escaped from the service of his owner, would be. "The false making," therefore, of that instrument, by which *Johnson* and the appellant might have been so injured, was a forgery at common law, for which the defendant, if guilty, would have been punishable by indictment, though it does not appear, that any body was actually injured thereby, which is not necessary to constitute forgery; and it is not like the case of a mere cheat, to constitute which, there must be a prejudice received: hence it follows, if this concise view of the subject be correct, that the words spoken by the appellant, as laid in the declaration, charging the defendant in error with having forged that instrument, are actionable, and that the demurrer was properly overruled.

JUDGMENT AFFIRMED.