LEVY *v.* STATE

[No. 263, September Term, 1960.]

202

*Decided May 2, 1961.*

*Motion for rehearing as to conspiracy count and to delay issuance of mandate filed May 5, 1961, denied May 8, 1961.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Frank Cannizzaro, Jr.,* for the appellant.

*Joseph S. Kaufman, Deputy Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *Dene L. Lusby, Assistant State's Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was indicted in five counts charging forgery, uttering, passing a bogus check with intent to defraud, false pretenses, and conspiracy. He was acquitted on the first count and convicted on the second, third, fourth and fifth counts and sentenced to two years under each of the second, third and fourth counts, to run concurrently, and three years on the fifth count, to run consecutively. On this appeal he challenges the sufficiency of the evidence to support the convictions on any of the counts.

It was shown that Ray's North Grill was broken into during the night of January 4, 1960, and that among other items missing were twenty checks, serially numbered 1610 through 1629. Six of these checks were recovered by the police, being numbers 1623 through 1628. All contained the printed name of Ray's North Grill and were signed by Raymond Gerber. The restaurant owner, Mrs. Foreman, testified that she knew no one by that name and that she was the only person authorized to sign checks.

William Rotkovitz, a pharmacist, testified that on January 8, 1960, Levy and another man, whom he knew by sight and as a resident of the neighborhood, but not by name, came into his drugstore. He cashed a check for $39.15 for the other man, who indorsed it in the name of Nathan Turner, said he was Nathan Turner, and gave an address on Pratt Street, to which he said he had recently moved. Levy offered to identify Turner and to indorse the check, but the proprietor said: "No, I know this fellow. I am going to cash it." The check was drawn on the Union Trust Company to the order of Nathan Turner, was numbered 1628, and bore the name of Ray's North Grill, signed by Raymond Gerber. The check was returned to Rotkovitz by the bank, marked "no authority to sign."

William Anthony Green testified that he received five checks from Levy numbered 1623 through 1627 and bearing the name of Ray's North Grill. It was agreed that he would cash the checks and split the proceeds with Levy and a third person, whose identity he did not know. Levy supplied him with a

wallet containing identification cards in the name of Nathan Turner to be used in the cashing operation. Green signed the name of Raymond Gerber and the name of Nathan Turner as payee to all the checks. He cashed two of the checks indorsing the name of Turner, and turned over part of the proceeds to Levy. He attempted to cash a third, but the storekeeper became suspicious and notified the police. Two checks were found in his possession when he was arrested. When asked about check number 1628, he testified he "didn't remember having it." There was no testimony that he was present when check number 1628 was cashed by Rotkovitz.

The counts under which Levy was convicted involved only the cashing of the check number 1628 by Rotkovitz. The conspiracy count alleged that Levy conspired with Green to obtain money thereon from Rotkovitz. Green was granted immunity on this count. He had previously been convicted of larceny and forgery in connection with the property and checks taken from Ray's North Grill. Levy took the stand and denied that he had ever been in the Rotkovitz drugstore and denied conspiring with Green or turning over any checks to him. It was brought out that Levy had a long criminal record and knew Green when they were in prison together.

We think the evidence is legally sufficient to support the conviction of conspiracy. The trial court stated in its opinion and analysis of the evidence that he believed that Green signed the names of Raymond Gerber and Nathan Turner to all six checks and found that they were in the same handwriting. He also found as a fact that Levy turned over the wallet containing cards identifying Nathan Turner to Green and drew the inference that the person who accompanied Levy to Rotkovitz's drugstore was not Nathan Turner. This wallet was found in the possession of Green when he was arrested. It contained a chauffeur's license, Social Security card, and other cards in the name of Nathan Turner, 1618 Madison Avenue. The evidence supports the trial court's finding of a conspiracy to defraud by passing the check in question. See *Hurwitz v. State*, 200 Md. 578, *Greenwald v. State*, 221 Md. 245, and *Bichell v. State*, 222 Md. 418.

We think there was also sufficient evidence to show the participation of Levy in the passing of check number 1628 and to establish that he knew that it was bogus. Levy offered to sign the check in order to assure Rotkovitz that the man who indorsed it was in fact Nathan Turner when, as the trial court found, he was not. He thus falsely represented it to be genuine. To constitute the offense of uttering (Code (1957), Art. 27, sec. 44) it is not necessary that the accused be the actual forger. 2 Wharton, *Criminal Law & Procedure* (Anderson's ed.), § 648; Underhill, *Criminal Evidence* (4th ed.), § 685. Cf. *Medley v. Warden,* 210 Md. 649. Testimony as to the uttering of other checks may be admissible to show a common scheme or intent. *Ward v. State,* 219 Md. 559. In 23 Am. Jur. *Forgery* § 5, it is said: "[G]enerally, the mere offer of the false instrument with fraudulent intent constitutes an uttering * * * regardless of its successful consummation * * *." See also *Arnold v. Cost,* 3 G. & J. 219, 231, *Reddick v. State,* 219 Md. 95, 99 and Clark & Marshall, *Crimes* (5th ed.), § 404. Since the evidence supports the inference that Levy aided, or offered to aid, in the uttering of the false instrument, it would seem to be immaterial that Rotkovitz did not rely upon his representation. Cf. *Felkner v. State,* 218 Md. 300, 304. The gist of the offense is the false representation, whether acted upon or not.

Violations of Code (1957), Art. 27, sec. 140 (false pretenses) and 142 (obtaining money by bad check) are separate offenses. See *Lyman v. State,* 136 Md. 40, and *Willis v. State,* 205 Md. 118, although an intent to defraud is necessary under both. It is not necessary that the payment be made to the accused in person if made at his request. *Simmons v. State,* 165 Md. 155. Cf. *Felkner v. State, supra.* However, it seems to be well established that it is essential both in a charge of obtaining money by false pretenses and under the bad check act that the victim actually rely upon the false representation. See 22 Am. Jur. *False Pretenses* § 25, and 2 Wharton, *Criminal Law & Procedure* (Anderson's ed.), § 600. The rule that reliance must be shown was stated by this Court in *Kaufman v. State,* 199 Md. 35, 40, although actual reliance was

found to exist in that case. See also *Willis v. State, supra,* at p. 127. In the instant case we think the testimony of Rotkovitz expressly negatives any inference of reliance on his part upon the representation of Levy. The judgments on these counts must be reversed.

> *Judgments upon the second and fifth counts of the indictment affirmed; judgments upon the third and fourth counts reversed, and case remanded for entry of an order striking out said judgments and sentences.*