## STEVEN RICHARD LIEVERS, JR. AND JAMES McLEAN v. STATE OF MARYLAND

[No. 242, Initial Term, 1967.]

---

598.

*Decided April 10, 1968.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and DIGGES, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*Bernard F. Goldberg* and *Douglas N. Sharretts* for appellants.

*Fred Oken, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Thomas J. Nissel, State's Attorney for Howard County,* and *James N. Vaughn, Assistant State's Attorney for Howard County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellants Steven Richard Lievers, Jr. and James McLean, together with Ernest Cherry, John E. Bell, and Samuel Terry, were charged in the Circuit Court for Howard County under

a three-count Criminal Information (No. 3458), substantially as follows:

(1) That on March 19, 1965, in Howard County, Maryland, they did unlawfully conspire to cause and procure to be falsely made, forged and counterfeited a certain check made payable to Steven Thompson, dated March 18, 1965, in the amount of $104.87, with intent to defraud.

(2) That on the same day, in the same county, they did unlawfully conspire to utter and publish as true a false, forged, altered and counterfeited check, being the same check as above described in count one, with intent to defraud.

(3) That on the same day, in the same county, they did unlawfully conspire by a certain false pretense to obtain from Rock Hill Corporation cash in the amount of $104.-87, with intent to defraud.

Appellants, together with the above named co-defendants, were also charged under Criminal Information No. 3459, as follows:

(1) That on the same day, in the same county, they did unlawfully conspire to hold and use a forged and counterfeited Maryland chauffeur's license issued to Steven Thompson, knowing such license to have been altered, forged and falsified, with intent to defraud.

(2) That on the same day, in the same county, they did unlawfully conspire to utter and publish as true, a false, forged, altered and counterfeited Maryland chauffeur's license issued to Steven Thompson, with intent to defraud.

Tried before the Circuit Court for Howard County (Macgill, C. J., presiding without a jury), appellants were convicted on each count of Criminal Information No. 3458, and on the first count of Criminal Information No. 3459. Appellant Lievers was sentenced to ten years in the Maryland Penitentiary on each count of Criminal Information No. 3458, sentences to run concurrently, and five years on the first count of Criminal Information No. 3459, to run consecutively with the ten-year sentence. Appellant McLean was sentenced to five years in the

Maryland Penitentiary on each of the three counts of Criminal Information No. 3458, sentences to run concurrently, and two years on the first count of No. 3459, to run consecutively with the sentences imposed in No. 3458. From these judgments, appellants have appealed, contending (a) that they were illegally arrested and, consequently, articles seized from them without a search warrant were improperly admitted into evidence, and (b) that venue of the conspiracies was improperly laid in Howard County, and (c) that the testimony at trial of accomplices in the conspiracies was not corroborated, and (d) that they were improperly convicted of four conspiracies when, at most, only one conspiracy was shown by the State's evidence.

The evidence adduced at the trial showed that William Wilson and James Jason, while awaiting trial on certain criminal charges, had agreed to aid the police in breaking up a bogus check ring; that Wilson advised Corporal Armond Elliott of the Baltimore County Rackets Squad that he had been invited by appellant Lievers to participate on March 19, 1965 in the activities of the ring and was to meet with Lievers and the others at noon at the Twelve and A Half Club in Baltimore City; that Corporal Elliott went to this location at the appointed time and, through binoculars, observed appellant Lievers and John Ellis Bell, sitting together in a 1963 Pontiac in front of the Club; that he observed Bell pass a small brown paper bag to Lievers, who opened it, pulled out some green pieces of paper which appeared to be checks, look at them, and return them to the bag; that Lievers then left the Pontiac and joined appellants McLean, Cherry, Terry, Jason and Wilson, in a 1959 brown and white Oldsmobile; that the Oldsmobile and its six passengers — appellants Lievers and McLean, Terry, Cherry, Jason, and Wilson—thereafter drove away, shortly after which Elliott arrested Bell and notified Lt. Michael Kradz of the Howard County Police Department by phone to be on the lookout for the Oldsmobile and its six passengers.

The evidence further discloses that Lt. Kradz had been investigating the activities of appellant Lievers and John Bell since January of 1965 and that with Corporal Elliott, had arranged for the assistance of Wilson and Jason in breaking up the operations of the bogus check ring; that after Kradz had

talked with Elliott by phone on March 19, he received a call from Wilson who informed him, in effect, that the 1959 Oldsmobile, which he described, together with its six occupants, was proceeding in a designated direction toward Howard County to cash bogus checks; that as a result of the call from Wilson, Kradz stationed men along the route of the Oldsmobile's travel and first observed it as it parked at Gabriel's liquor store in Baltimore County; that Kradz saw three of the occupants of the Oldsmobile, one of whom was appellant McLean, enter the store; that after they departed from the store, the Oldsmobile picked them up and proceeded into Ellicott City in Howard County, where they parked on a parking lot and the same three persons entered the Rock Hill liquor store; that Lt. Kradz then went over to the Oldsmobile and told appellant Lievers that he was under arrest, immediately after which he went into the Rock Hill liquor store where he learned from the proprietor that a tall Negro with a mustache, wearing an Army field jacket and a green sweat shirt and a hood had attempted to cash a check; that Kradz left the store and arrested appellant McLean, who answered the description provided by the liquor store proprietor; and that McLean turned over to Kradz a brown envelope containing a Robert C. Herd & Co. check made payable to Steven Thompson for $104.87, a voter's card, Social Security card, and a chauffeur's license, all of which were in the name of Steven Thompson, and all of which proved to be forgeries and counterfeits.

Following the arrests, the Oldsmobile was taken to the Howard County police station where a search of its interior revealed a brown paper bag containing a number of checks, identification cards, and chauffeurs' licenses made out in the name of various individuals, all of which also proved to be forgeries and counterfeits. The documents taken from McLean and seized from the Oldsmobile in which Lievers was a passenger at the time of his arrest were introduced into evidence over objection.

It was shown at the trial through the testimony of Wilson, Jason, Cherry, and Terry that appellant Lievers provided appellant McLean and the other occupants of the Oldsmobile with forged checks and identification cards, including forged and

counterfeited Maryland chauffeurs' licenses, for the purpose of having the checks negotiated, and that this mode of operation was pursued, *albeit* unsuccessfully, both at Gabriel's liquor store in Baltimore County and at the Rock Hill liquor store in Howard County on March 19.

Evidence was also adduced at the trial to show that prior to appellant Lievers's arrest, Corporal Elliott had obtained an arrest warrant for him for offenses committed in 1964, which he served upon Lievers after he had been arrested by Kradz. In addition, there was evidence showing that prior to the time Kradz arrested Lievers, he had been informed over his police car radio that a warrant was outstanding for Lievers's arrest for a prior offense, and that Lievers's arrest was based, at least in some part, upon Kradz's knowledge of this warrant.

At the conclusion of the State's case, the appellants moved for judgments of acquittal, which were denied. Neither Lievers nor McLean took the witness stand and both declined to testify. The defense offered no evidence and appellants renewed their motions for judgments of acquittal, which were again denied.

I

We find no merit in appellants' contention that they were unlawfully arrested and that the incriminating articles seized from them were inadmissible in evidence. It is, of course, well settled that a police officer may arrest a suspect without a warrant if he has probable cause to believe that a felony has been or is being committed and that the arrestee has committed or is committing the offense. *Capparella v. State,* 235 Md. 204; *Young v. State,* 234 Md. 125. It is equally well settled that probable cause exists where the facts and circumstances within the knowledge of the arresting officer or of which he has reasonable trustworthy information are sufficient to warrant a reasonably cautious man in arriving at that particular conclusion. *Duffy v. State,* 243 Md. 425; *Edwardsen v. State,* 231 Md. 332. We think it clear that the arresting officer, Lt. Kradz, had reasonable grounds to believe that a felony had been or was being committed and that appellants were participants in its commission. The evidence shows that Kradz had knowledge of the bogus check ring and of Lievers's involvement with it for more than two months prior to March 19, 1965, the day of the arrest, and

that he had been advised by his informer, who was working directly with the ring, that they were going to operate that day. This information was verified, in part at least, by Corporal Elliott who had seen the suspected criminals together earlier that day in Baltimore City. Kradz was provided with a description of the vehicle in which the suspects were riding and observed them in an apparent attempt to cash a check in Baltimore County. While it does not appear from the evidence that Lt. Kradz had verified information prior to arresting appellants that they attempted to cash a check at Gabriel's liquor store, he did know, prior to arresting appellant McLean, that such an attempt had been made by McLean at the Rock Hill liquor store in Howard County. It is elementary that the mere offering of a false instrument with fraudulent intent constitutes an uttering —a felony—regardless of its successful consummation. See *Draper v. State,* 231 Md. 423; *Levy v. State,* 225 Md. 201. We hold, therefore, that Kradz was justified in concluding, under all the circumstances then known to him, that appellant McLean had committed a felony, so that his arrest was clearly lawful and the documents taken from him at that time incident to such lawful arrest were properly admitted in evidence. While appellant Lievers was arrested just prior to the time of McLean's arrest, and hence prior to Kradz's actually knowing that McLean had attempted to cash a check in the Rock Hill liquor store, we believe it evident that Kradz's knowledge of the ring's activities at the time he arrested Lievers was such that he had probable cause to conclude that Lievers was, with McLean and the others, also engaged in the commission of a felony, *viz.,* the uttering of forged checks. It is, furthermore, clear that Kradz's knowledge of the outstanding warrant for appellant Lievers, communicated to him over his car radio, was sufficient justification in and of itself to make lawful Lievers's arrest. See *St. Clair v. State,* 1 Md. App. 605. We hold, therefore, that the seizure of the brown paper bag from the Oldsmobile in which appellant Lievers was seated when arrested was also lawful.[1] See also *Lewis v. State,* 2 Md. App. 678.

---

1. Appellants suggest that they are only charged with the crime of conspiracy and not with the substantive crimes of forgery, utter-

## II

Appellants next contend that the conspiracies charged in both Criminal Informations occurred and were completed in Baltimore City and the venue of the offenses was thus improperly laid in Howard County. They argue that even accepting the State's contention that acts in furtherance of the conspiracies took place in Howard County, nevertheless, such acts did not create a second conspiracy, but were simply acts in furtherance of the substantive crimes of attempting to obtain money by false pretenses or attempting to utter and publish false or counterfeit documents, neither of which substantive offenses were charged against them in these proceedings.

While it is generally held that a conspiracy may be prosecuted where the illegal agreement arose, or where an overt act in furtherance of the agreement occurred,[2] we think the short answer to appellants' contention is that they waived objection to the venue of the offenses in Howard County by their failure to timely object thereto and by pleading to the charges. See *Cole v. State*, 232 Md. 111, 118; *Medley v. Warden*, 210 Md. 649, 653; *Kisner v. State*, 209 Md. 524. Nor do we find merit, under the circumstances of this case, in appellants' contention that such a waiver should be excused since the importance of venue was not known to them until they heard the State's evidence relating to the uttering and forging of the checks and documents.

## III

Appellants' third contention is that the State's witnesses, Wilson, Jason, Terry and Cherry, were co-conspirators and not

---

ing and false pretenses and that since conspiracy is a misdemeanor, their arrests cannot be rendered valid if based upon probable cause to believe that a felony had been committed. We find no merit to this argument. If the circumstances make an arrest legal for one crime there may be a reasonable seizure of goods unlawfully in the possession and under the control of the one arrested and a consequent right to use them as evidence in a trial for a crime different from that which justified the arrest. *Braxton v. State*, 234 Md. 1; *Edwards v. State*, 196 Md. 233; *Nichols v. Warden*, 232 Md. 663.

2. See 16 Am. Jur. 2d, *Conspiracy*, §18, p. 137; *Hyde v. United States*, 225 U. S. 347; *Brown v. Elliott*, 225 U. S. 392. See also *Greenwald v. State*, 221 Md. 245; *Archer v. State*, 145 Md. 128; *Bloomer v. State*, 48 Md. 521.

informers, and, therefore, as accomplices, their testimony was required to be corroborated.

According to the testimony of Corporal Elliott and Lt. Kradz, the help of Wilson and Jason had been solicited in an effort to break up the bogus check ring in which Lievers was one of the principal participants. The testimony showed that Wilson made two telephone calls on the day of the arrest, one to Corporal Elliott and one to Lt. Kradz, advising them that the bogus check ring would operate that day and of the planned foray into Baltimore and Howard Counties for that purpose. The lower court found Wilson to be an informer and pointed out that it is hardly likely that Wilson would have telephoned the police with information of the impending check cashing operation had he been criminally involved as a co-conspirator. Even assuming that all four of these witnesses were co-conspirators, there was abundant evidence sufficient to corroborate their testimony in the observations made by Corporal Elliott and Lt. Kradz and the events that occurred on that day. Accordingly, we find no merit to this contention.

## IV

Appellants' fourth and final contention is that the lower court erred in finding them guilty of four crimes when, in fact, only one crime existed according to the State's evidence. They argue that the State's testimony related exclusively to an alleged meeting of the minds in Baltimore City to pass bogus checks in Howard County and that each of the elements forming the subject matter of the conspiracy was listed in separate counts and even separate informations, when, in substance, they were all elements which made up only one conspiracy, namely, to defraud through the use of bogus checks; and that therefore the finding of guilt as to separate offenses of conspiracy was in error.

As indicated, appellants were convicted of (a) conspiracy to forge a designated check in the amount of $104.87, (b) conspiracy to utter said forged check, (c) conspiracy to obtain $104.87 from a designated corporation by a "certain" false pretense, and (d) conspiracy to hold and use a designated forged and counterfeited Maryland chauffeur's license. In *Tender v. State*, 2 Md. App. 692, we held that a person should not be

twice punished for the same acts whether the offenses charged by reason of such acts be deemed to be inconsistent, duplicitous, or to have merged. The true test of merger of offenses is whether one crime necessarily involves the other. *Green v. State,* 243 Md. 75. Thus in *Sutton v. State,* 2 Md. App. 639, we held, on the facts of that case, that the substantive offense of uttering merged into the offense of false pretenses where the false representation consisted only of the uttering. It appears to us from the evidence in this case that the conspiracy to utter merged into the conspiracy to obtain money by false pretenses since no false representation independent of the uttering of the forged check itself is shown by the evidence.

Holding and using a forged Maryland chauffeur's license with fraudulent intent is a felony under Section 77 (4) of Article 66½ of the Maryland Code (1967 Repl. Vol.). We think it clear that appellants' conviction for conspiring to hold and use such a document clearly charges an act separate and distinct from any of the conspiracies charged under Criminal Information No. 3458 and is indeed broader in scope than the other conspiracies since it is not limited to an agreement to hold and use such forged license solely in connection with an illegal effort to negotiate a forged check made payable to Steven Thompson in the amount of $104.87, dated March 18, 1965.

> *As to each appellant under Criminal Information No. 3458:*
> > *Judgments affirmed as to the first and third counts; judgments vacated as to the second count as merging with the third count.*
> *As to each appellant under Criminal Information No. 3459:*
> > *Judgments affirmed.*