JON FREDERICK PEARSON *v.* STATE OF
MARYLAND

[No. 1, September Term, 1969.]

*Decided November 17, 1969.*

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*E. Gwinn Miller* for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *E. Allen Shepherd, Jr., Assistant State's Attorney for Prince George's County,* on the brief for appellee.

MURPHY, C.J., delivered the opinion of the Court.

The appellant Jon Frederick Pearson was convicted by a jury of uttering a forged check and was sentenced to four years in the custody of the Department of Correction. From this judgment he appeals, alleging that the trial judge erred when he refused to instruct the jury, as requested, that to convict him for uttering a forged check, it must find that he knew the check was forged.

On April 7, 1968, someone broke into an office trailer belonging to the Billy J. Walker Contracting Corporation in Prince George's County, stealing a check writer and a quantity of corporate checks, numbers 6020 through 6500, bearing the name of that company. On April 18, 1968 at about 3:00 p.m., the appellant Pearson entered the Greenbelt Consumers Cooperative Store, located in the Capital Plaza Shopping Center in Prince George's County, presented Walker's check No. 6082, payable to Loris M. Forrester, to the Assistant Manager Bernard Vaughn, and asked: "Can you cash this check for me?" The check, which was signed by Billy J. Walker, was not endorsed.[1] Vaughn, who had been alerted that the Walker checks had been stolen, said: "Do you have some identification," and Pearson said "Yes," giving him a driver's license in the name of Loris M. Forrester. Vaughn said, "Is this you?" Pearson replied

---

1. Walker testified that his signature was a forgery.

"Yes." Vaughn told Pearson that the store manager had to approve the check, and that he was in the barbershop getting a haircut. Vaughn then went to the barbershop where he alerted a Plaza policeman. Pearson, after waiting a while, followed Vaughn to the barbershop where the latter confronted him with the fact that the check was "bad." Pearson claimed that "it wasn't his check and it wasn't his identification," and that a "Loris" had given both to him when he was in the Montgomery Ward store located in the shopping center so that Pearson could cash the check for him. Vaughn and the policemen then took Pearson to Wards but Forrester could not be located. On the way back to the Greenbelt store, Pearson asked whether Vaughn was going to call the police and when Vaughn answered "Yes," Pearson tried to run. He was held by Vaughn and the policeman and offered no further resistance.

At trial, Rosilyn Payne, a girlfriend of Pearson, testified that she, Pearson, and Forrester had driven to the shopping center in Pearson's car; that Forrester gave Pearson what he called his paycheck and his identification, and told Pearson to cash the check because he (Forrester) had a lot of things to do at Montgomery Wards; that she then went with Pearson to the Greenbelt store and when Pearson could not cash the check, she went, at his request, to look for Forrester at Wards; but that she did not find him. Miss Payne testified that she unsuccessfully looked for Forrester up to the time of trial. She said that she had previously seen Forrester on several occasions and presumed from his work clothes and frequently dirty appearance that he was a construction worker.

At the conclusion of the trial, appellant urged upon the court that "there hasn't been any evidence the defendant knew the check was forged," to which the court replied, in effect, that the State could never prove a case if this were a requirement, since what the accused knew was known solely to him. The appellant nevertheless repeatedly insisted that to be guilty of uttering a forged

check, it was necessary that the State show that he had prior knowledge that the instrument was a forgery, and on three occasions he asked the court to give an advisory instruction to that effect to the jury. The prosecutor took the position that prior knowledge of the forgery was not an element of the crime, and that to require the State to show that the appellant knew the check was forged was to impose upon it an impossible burden. Believing the State's position to be sound, the court limited its instructions to the jury with respect to the elements of the offense, as follows:

> "Now, of the uttering a forged instrument, 'To utter or pass a forged instrument and with intent to defraud is a misdemeanor . . .' and so forth. It is also necessary that — referring to the defendant—he shall intend to defraud some person, but such an intent may be inferred from the circumstances as from the fact he knew the instrument—well, we will delete that part. But an intent may be inferred from the circumstances and the probable consequence of its utterance was to defraud.
>
> \* \* \*
>
> "Referring to uttering, the mere offer of a false instrument with fraudulent intent constitutes an uttering, regardless of its successful consummation. To constitute the offense of uttering it is not necessary that the accused be the actual forger."

We think the court, in so limiting its instructions, and refusing to charge the jury that prior knowledge that the check was forged was an element of the offense, committed reversible error.

The indictment returned against appellant charged that he did "feloniously utter and publish as true a certain false, forged, altered and counterfeited" check (as therein described), with "intent then and there to defraud, contrary to the form of the Act of the Assembly

in such case made and provided"—presumably Section 44 of Article 27 of the Maryland Code which, insofar as pertinent, reads as follows:

"Any person who shall falsely make, forge or counterfeit, * * * any bill of exchange * * * with intention to defraud any person whomsoever, or shall utter or publish as true any false, forged, altered or counterfeited * * * bill of exchange * * * shall be deemed a felon * * *."

Section 612 of Article 27 provides that it shall be sufficient in any indictment for uttering "to allege that the defendant did the act with the intent to defraud, without alleging the intent of the defendant to be to defraud any particular person." In *Reddick v. State*, 219 Md. 95, the court held that this Section made it unnecessary to allege in any indictment for uttering, or to prove, that it was the intent of the defendant to defraud any particular person. We think it clear that the Legislature did not intend to define the elements of the crime of uttering in Section 612. We think it equally plain that the Legislature did not outline the elements of the offense in Section 44; indeed, that Section, as heretofore indicated, specifies neither knowledge that the instrument was forged, nor intent to defraud, as elements of the offense—it simply provides that any person who shall "utter or publish as true" a false, altered, forged, or counterfeited instrument shall be deemed a felon. That we must look elsewhere for a definition of the crime is thus readily apparent.

The authorities generally agree that at common law, "[u]ttering a forged instrument is offering as genuine an instrument known to be false, with intent to defraud." *Perkins on Criminal Law* (2nd Edition) page 364. *See, e.g.*, Clark and Marshall, *Crimes*, (6th Edition) § 12.36; *2 Wharton's Criminal Law and Procedure* (Anderson Edition) §§ 648-649; 36 Am.Jur.2d, *Forgery*, § 20; Annotation, 164 A.L.R. 621-685, at page 660. Indeed, as early as *Commonwealth v. Searle*, 2 Binney 332, 4 Am.

Dec. 446 (Pa. 1810), it was recognized that knowledge that an instrument was forged was a required element of the crime of uttering at common law in this country. The first post 1776 Maryland statute dealing with the uttering of a forged instrument—Acts of 1778 (March session), Chapter 17—included prior knowledge of the forgery as an element of the offense. This requirement was continued in the first general forgery and uttering statute enacted in Maryland, *viz.,* Chapter 75 of the Acts of 1799, wherein it was provided that uttering a forged instrument "knowing [it] to be falsely made" and "with intention to defraud any person" was a felony. While Section 44, in its present form, does not contain any requirement of prior knowledge of the instrument's falsity, or of an intention to defraud, we think it plain that by making it unlawful to "utter or publish as true" a forged instrument, the Legislature thereby intended to encompass all elements of the offense—long known in Maryland—of uttering a forged instrument. See *Putnam v. State,* 234 Md. 537; *Baker v. State,* 6 Md. App. 148.[2]

*Levy v. State,* 225 Md. 201, decided in 1961, is the leading Maryland case dealing with the crime of uttering a forged instrument. There, the evidence showed that four days following the theft of a number of checks, an individual claiming to be Nathan Turner, accompanied by the defendant Levy, undertook to cash one of the stolen checks (#1628) in a drugstore. The check was payable to Turner, and was signed by a Raymond Gerber as maker. Levy offered to identify Turner and to endorse the check, but the proprietor said that it would not be necessary, and cashed the check. The check was ultimately returned to the druggist by the bank marked "no authority to sign." The evidence further showed that Levy had other of the stolen checks in his possession; that he had supplied identification cards in the name of

---

2. We think it clear that the indictment, as drawn, properly charged the offense. See *Putnam v. State, supra,* at page 545; *Baker v. State, supra,* particularly footnote 5, at page 154, and pages 156-158; and *Marino v. State,* 171 Md. 104.

Nathan Turner to other persons to be used in the cashing operation; and that he (Levy) shared in the proceeds realized from the cashing of several of these checks. The court, in affirming Levy's conviction for uttering the check in the drugstore, stated at page 206 that the evidence was legally sufficient "to show the participation of Levy in the passing of check number 1628 *and to establish that he knew that it was bogus.*" (emphasis supplied) On the question whether Levy's offer to endorse the check and to verify the identity of Turner was sufficient to constitute the *actus reus* of uttering, the court said at page 206:

> "* * * He thus falsely represented it to be genuine. To constitute the offense of uttering [under Section 44] it is not necessary that the accused be the actual forger. * * * Testimony as to the uttering of other checks may be admissible to show a common scheme or intent * * *. In 23 Am. Jur. *Forgery* Section 5, it is said: '[G]enerally, the mere offer of the false instrument with fraudulent intent constitutes an uttering * * * regardless of its successful consummation * * *.' Since the evidence supports the inference that Levy aided, or offered to aid, in the uttering of the false instrument, it would seem to be immaterial that [the druggist] did not rely on his representation. * * * The gist of the offense is the false representation, whether acted on or not."

It would thus appear from *Levy* that the court, in reviewing the sufficiency of the evidence to support the uttering conviction, considered not only the question of Levy's fraudulent intent, but also the question of his prior knowledge that the check was forged. It is in such context, and against such a background, that we consider the meaning and significance of the court's statement that "the mere offer of the false instrument with fraudulent intent constitutes an uttering regardless of

its successful consummation." And when so considered, we believe it readily apparent that the court did not, by reason of the quoted statement, intend to exclude the common law requirement of prior knowledge of the instrument's falsity as an essential ingredient of the offense.

In *Draper v. State,* 231 Md. 423, the defendant tried to negotiate a check made out for $62.00 to his alias as payment for an auto repair bill of $24.74; the repairman refused to accept it. Thereafter, the defendant obtained $20.00 and gave the unendorsed check to the repairman as collateral for the balance of $4.74, thereby effecting the release of his car. Holding that the negotiation or endorsement of the check was not necessary to convict the defendant of uttering, the court stated (page 426):

"The mere offer of a false instrument with fraudulent intent constitutes an uttering regardless of its successful consummation."

As the defendant there admitted that he filled out the check himself, and a handwriting expert testified that the drawer's signature had in fact been forged, there was clear evidence of the defendant's prior knowledge that the check was a forgery. In any event, whether the defendant knew the instrument was forged was not an issue in the case, and hence the quoted statement is properly construed to have dealt only with the issue of consummation, viewed in light of the fact that the check had not been endorsed.

In *Lievers v. State,* 3 Md. App. 597, 604, we cited *Levy* and *Draper* for the proposition that "the mere offering of a false instrument with fraudulent intent constitutes an uttering—a felony—regardless of its successful consummation." But the question of the consummation of the crime of uttering, and not appellant's knowledge that the checks were forged, was the issue in that case, and our holding in *Lievers* must be considered in the context of the resolution of that question. In *Beard v. State,*

4 Md. App. 685 and *Turner v. State,* 6 Md. App. 337, we restated our holding in *Lievers* in determining the legal sufficiency of the evidence to support uttering convictions in those cases. But in neither case were we called upon to specifically consider the question whether the defendant's prior knowledge of the forged character of the instrument was an element of the offense.[3] It is, however, true that in *Turner* we flatly stated (page 339) :

> "* * * [T]he evidence shows that the check was forged and there was adequate evidence that Turner attempted, with a fraudulent intent, to pass the check. No more is required to support a conviction for uttering, * * *."

But Turner's defense was not that he did not know the check was forged; rather, he denied attempting to cash the check and claimed that his companion was the one who did so. There was clear evidence before the trier of fact from which it could rationally conclude that Turner knew the check was forged, *viz.,* there was evidence that the check was payable to a Robert Davis, that Turner represented himself as Davis and so endorsed the check, and that Turner attempted to run from the scene of the uttering when the police approached.

We are thus faced squarely, for the first time, with the question whether prior knowledge that the instrument was a forgery is an essential ingredient of the offense of uttering. We hold that it is and that the factors required to constitute the crime of uttering a forged instrument under Section 44 are these : (1) the instrument must be uttered or published as true or genuine; (2) it must be known by the party uttering or publishing it that it is false, altered, forged, or counterfeited; and (3) it must be uttered with intent to defraud another person. *Cf. State v. Singletary,* 196 S. E. 527 (S.C.).

While guilty knowledge is thus essential to a conviction of uttering, such knowledge, like fraudulent intent,

---

3. There was evidence, legally sufficient in each case, to show the guilty knowledge of the accused.

may be inferred from the facts and circumstances accompanying the particular transaction. *See Anello v. State,* 201 Md. 164; *Johnson v. State,* 2 Md. App. 486; *McGlothlin v. State,* 1 Md. App. 256. In other words, knowledge, like intent, is a state of mind generally to be inferred from the person's conduct viewed in the light of all the accompanying circumstances. Otherwise stated, the state of one's mind is always a question of fact, and being subjective in nature, proof thereof is seldom direct, but is usually inferred from proven circumstances. See *Weaver v. State,* 226 Md. 431; *Anderson v. State,* 3 Md. App. 85. So, in *Anderson v. United States,* 270 F. 2d 124, 127 (6th Cir.), a case involving the uttering of a federal obligation, the court said:

> "It is essential for the government to establish that Anderson knew the check was forged. Knowledge in the mind of another is a subjective thing. It is not always capable of proof by positive or direct evidence. It may be inferred or gathered from the outward manifestations by the words or acts of the party charged with knowledge and from the facts and circumstances surrounding or attendant upon the act with which it is charged to be connected. It may be proved by all the facts and circumstances disclosed by the evidence taken in connection with the case."

In *People v. Mitchell,* 28 P. 597 (Cal.), the court, while holding that an instrument must be offered with knowledge of its falsity, stated that guilty knowledge may be inferred from circumstantial evidence such as the flight of the accused upon realizing that the person to whom the instrument was offered was suspicious of its authenticity — a strong circumstance indicating guilty knowledge as we recognized in *Turner v. State, supra.*

We think it clear, therefore, that in a prosecution for uttering a forged instrument, it is no more burdensome for the State to adduce proof of guilty knowledge than

it is to produce proof of fraudulent intent.[4] We do not, however, think it proper to infer by the *mere* uttering of the false instrument as valid that the person knew it was forged. In other words, the mere act of possessing a forged instrument, and attempting to utter it, cannot give rise to a conclusive inference of guilty knowledge, although it is a circumstance to be taken into consideration with all the other facts in determining whether the defendant knew of the instrument's falsity. On the other hand, it has been held that if the defendant at the time he uttered the instrument knew it was false, the inevitable consequence was that he intended to defraud. See *Reg. v. Cook*, 173 Eng. Rep. 627 (1838), and cases collected in footnote 6 of 164 A.L.R. at page 672. Between these two poles lie cases where a person may pass a forged instrument without knowledge of its falsity, but with the intent to defraud, as, for example, where he undertakes to negotiate an instrument believed genuine belonging to another which he may have found or stolen or for the payment of which sufficient funds were known not to be available. In these instances, the person's intent would be fraudulent but he would not be guilty of uttering a forged instrument.

With these principles in mind, we turn to the facts of the instant case and to the question whether the court's refusal to instruct the jury that guilty knowledge was an element of the offense constituted reversible error. And in this connection, we note the applicability of the well settled principle that it is incumbent upon the court when requested in a criminal case to give an advisory instruction on every essential question or point of law supported by evidence. *Gaskins v. State*, 7 Md. App. 99; *Halcomb v. State*, 6 Md. App. 32; *Gordon v. State*, 5 Md. App. 291.

---

4. Indeed, it would appear that the State's burden of proof is similar to that in a prosecution for receiving stolen goods where, to sustain a conviction, the State must show, *inter alia*, that the receiver had guilty knowledge that the property was stolen and that his intent in receiving it was fraudulent. See *Kincer v. State*, 5 Md. App. 80; *McGlothlin v. State, supra*.

Appellant's defense to the charge of uttering was that he did not know the check was forged; that he attempted to cash it only as a favor for his friend Loris; and that he did not offer to endorse the check. The testimony of appellant's girlfriend tended to support appellant's defense and, although Loris was not produced at the trial, there was evidence which, if believed, indicated that Loris Forrester was other than a fictitious person. The State showed that the check had been stolen, that the drawer's signature was a forgery, that appellant represented himself to be the payee, and that after unsuccessfully attempting to cash the check, and upon being told it was "bad," he tried to run away.

In its advisory instructions, the court told the jury, in net effect, that it could convict the appellant of uttering if it found that the check was forged and that his intent in passing it was fraudulent. The jury was thus free to convict appellant without considering the question of his prior knowledge of the instrument's falsity. Under the court's instructions, if the jury was persuaded that appellant was innocently attempting to cash the check for his friend Loris—this being the basis of his defense—it could not properly have found that his intent was fraudulent. By its verdict, therefore, the jury would seemingly have had to find that appellant was not an innocent agent and that in undertaking to negotiate the check, he intended to defraud the store owner. The jury could not have rationally so concluded under the facts of this case unless it believed that appellant knew the check to be a false instrument. Under these circumstances, it could be said that while the court was in error in failing to instruct the jury to consider the element of appellant's guilty knowledge, nevertheless such failure amounted at most to an academic error without prejudicial impact on the fairness or outcome of the trial. But to so hold is to deny the appellant his right to have the jury *specifically* and *particularly* instructed, as he repeatedly requested, that guilty knowledge was a prerequisite to conviction. As the court was itself persuaded that guilty knowledge

was not an essential element of the offense, we are unwilling to attribute to the jury, in arriving at its verdict, a finding, implicit or explicit, that it was essential, and that the existence of such element was satisfied by the proof. The vagaries of jury verdicts are such that we decline to speculate that the jury's verdict in the present case was necessarily reached with a full understanding that it could not convict appellant of uttering absent a finding that he had knowledge that the check was forged.

*Judgment reversed; case remanded for a new trial.*