The STATE of Utah, Plaintiff and Respondent,

v.

Richard Scott NOREN, Defendant and Appellant.

No. 18555.

Supreme Court of Utah.

Aug. 5, 1985.

John Caine, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Curtis Drake, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

PER CURIAM:

Defendant appeals from his conviction by a jury of two counts of theft by deception in violation of U.C.A., 1953, § 76–6–405 (1978 ed.). He assigns as error the trial court's submission of the case to the jury and its failure to instruct the jury on his defense. We affirm.

The facts viewed most favorably to the verdict of the jury disclose that on March 9, 1979, defendant purchased a Mitchell motor home, No. SK2209–10, from the manufacturer Mitchell & Sons in Colorado. Defendant was the owner of Central RV Sales, a motor home sales and rentals business. Within a few days after the purchase, defendant sold the motor home to Camelot Marketing for $16,200. Camelot took out a loan for that amount secured by the motor home as collateral. Additionally, Camelot issued defendant two Camper World memberships and one Camper World membership to store and service the motor home for three years. Value of the membership privileges was estimated at between $8,000 and $10,000. Camelot transferred the memberships to defendant's name, although the certificates never changed hands. Camelot left the motor home on defendant's lot under a lease-back arrangement with the understanding that defendant would attempt to rent the vehicle to interested parties, collect the rent, and maintain the motor home for Camelot. Camelot in turn would have free use of the motor home whenever it was available. Camelot also expected defendant to perform the necessary title transfer normally conducted by dealers.

On March 22, defendant, finding himself in financial difficulty, entered into an agreement with Roland Jewett, whereby Jewett agreed to take out a loan secured by the same motor home as collateral. Jewett would not have so agreed had he known about the prior sale to Camelot. Defendant gave Henderson, a salesman who had presented the motor home lease-back program to him, the manufacturer's statement of origin necessary to obtain the loan from the bank. Henderson completed the paper work for defendant and gave him Jewett's check for $22,536, the loan value of the unencumbered motor home. Defendant endorsed it and placed it in his account. Defendant's agreed performance to Jewett called for monthly payments on the loan to Jewett, together with an initial $1,000 and an additional $500 per month for the life of the loan. Defendant never paid the latter two amounts, although he did make eight monthly payments on the loan. Jewett eventually paid the loan with his own funds.

On April 10, the motor home was registered to LaVon Noren, defendant's wife.

In the early part of April, Henderson contacted Roger Russell, a dentist, to acquaint him with defendant's lease-back program, under which Russell would purchase a motor home with a bank loan secured by the vehicle, defendant would receive the proceeds of the loan, make the monthly loan payments, and deliver possession of the motor home to Russell after the loan had been paid off. Both defendant and Henderson told Russell that the motor home would be registered in Russell's name. Again Henderson took care of the paper work and presented the papers on the same motor home that had previously been twice used as collateral to the bank. Russell paid defendant $21,000, but the check was returned for insufficient funds, inasmuch as the bank rejected the application. During defendant's temporary absence from the State, Henderson successfully negotiated a loan with a different bank and delivered the check to defendant's caretaker who held it until defend-

ant's return. Defendant endorsed the check and deposited it in his account. The Department of Motor Vehicle records show registration in Camelot on August 10, 1979. Both Russell and Jewett lodged criminal complaints against defendant when they failed to receive either the promised payments or the title requested by them and their respective bankers.

With this evidence before the jury at the conclusion of the State's case in chief, defendant moved to dismiss the case against him for lack of evidence. The motion was denied.

## I.

Defendant contends that Count I should have been dismissed because he and Jewett contemplated a loan agreement and not the sale of the motor home, and the State failed to show that he had the criminal intent to deprive Jewett of the motor home. Count II should have been dismissed because the State failed to establish a prima facie case showing that the intent element required for the theft offense was present directly against the defendant or in some vicarious fashion through the acts of others.

▮▮▮ A defendant's motion to dismiss for insufficient evidence at the conclusion of the State's case in chief requires the trial court to determine whether the defendant must proceed with the introduction of evidence in his defense. *State v. Smith,* Utah 675 P.2d 521 (1983). *See also* Utah R.Crim.P. 17(*o*); U.C.A., 1953, § 77–17–3. In order to submit a question to the jury, it is necessary that the prosecution present some evidence of every element needed to make out a cause of action. *State v. Romero,* Utah, 554 P.2d 216 (1976). That was done here. "A person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof." U.C.A., 1953, § 76–6–405(1) (1978 ed.). "Deception" is defined in section 76–6–401(5):

"Deception" occurs when a person intentionally:

(a) Creates or confirms by words or conduct an impression of law or fact that is false and that the actor does not believe to be true and that is likely to affect the judgment of another in the transaction; or

(b) Fails to correct a false impression of law or fact that the actor previously created or confirmed by words or conduct that is likely to affect the judgment of another and that the actor does not now believe to be true; or

(c) Prevents another from acquiring information likely to affect his judgment in the transaction; or

(d) Sells or otherwise transfers or encumbers property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid or is or is not a matter of official records; or

(e) Promises performance that is likely to affect the judgment of another in the transaction, which performance the actor does not intend to perform or knows will not be performed; provided, however, that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

▮▮ The deception must occur at the time of the transaction. *State v. Droddy,* Utah, 702 P.2d 111 (1985), citing *State v. Lakey,* Utah, 659 P.2d 1061 (1983).

▮▮ Jewett and his banker testified that the loan was obtained under the impression that title was unencumbered to give the bank a loan or neither would have agreed to the transaction. Russell was uninformed of the sale to Camelot and the subsequent loan to Jewett when he obtained his loan ostensibly on the strength of defendant's ownership claim. In both instances, defendant obtained the checks representing the loan value of the unencumbered motor home and deposited them to his account. There was thus sufficient

evidence to establish a prima facie case under the statutory definition of "deception" and the court did not err in putting defendant on his defense. Defendant's argument that he had a claim of right to the motor home falls of its own weight. He was charged with obtaining monies by deception.

### II.

 Defendant next contends that it was error for the trial court to reject his proposed jury instruction which stated:

> You are instructed that it is a defense to the crime of theft by deception if the defendant:
>
> (a) Acted under an honest claim of right to the property involved; or
>
> (b) Acted in an honest belief that he had the right to obtain or exercise control over the property as he did; or
>
> (c) Obtained or exercised control over the property honestly believing that the owner, if present, would have consented.

The record before us contains nothing but a terse "denied" initialed by the trial court on the face of the instruction. "The burden of showing error is on the party who seeks to upset the judgment. In the absence of record evidence to the contrary, we assume regularity in the proceedings below and affirm the judgment." *State v. Jones*, Utah, 657 P.2d 1263, 1267 (1982). We do not know whether defendant objected to any deficiency in the instructions given or requested that any deficiency be remedied by the instruction he proposed. Absent exigent circumstances which do not exist here, he is precluded from now contending error. *State v. Kazda*, Utah, 545 P.2d 190 (1976). Moreover, without some evidence at trial to justify a requested instruction, the court is correct in refusing. *State v. Hafen*, Utah, 593 P.2d 538 (1979).

Defendant contends that he acted under an honest claim of right when he obtained the check from Jewett, as Camelot had only partially performed its obligation to him and he did not consider the motor home sold. Defendant failed to carry his burden to show that he had rescinded the contract with Camelot or returned its money, so there was no eevidence before the trial court to support that defense. Moreover, that defense does not aid him in the transaction with Russell who was the third purchaser of the motor home and surrendered the full loan value of the unencumbered motor home.

The judgment is affirmed.

STEWART, J., dissents.

HOWE, J., having disqualified himself, does not participate herein.