**STATE of Utah, Plaintiff and Appellee,**

v.

**Alan KIHLSTROM, Defendant and Appellant.**

**No. 981388–CA.**

Court of Appeals of Utah.

Oct. 15, 1999.

Lisa J. Remal and Robert K. Heineman, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Jan Graham, Attorney General, and Kenneth A. Bronston, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and ORME.

## OPINION

ORME, Judge:

¶ 1 Defendant appeals his conviction for forgery, a third degree felony, in violation of Utah Code Ann. § 76-6-501 (Supp.1999),[1] claiming that the State failed to present a prima facie case of uttering a forged check in its case-in-chief. We affirm.

## BACKGROUND

¶ 2 In the fall of 1996, Furst Construction (Furst) discovered that unauthorized checks, with numbers in the 18,000s, were being drawn on its account. It then discovered several checks had been stolen. Furst notified the police, put stop payment orders on all checks in the 18,000 series, and closed the related bank account.

¶ 3 In April 1997, defendant presented a check to the bartender at Bill's Lounge in Magna. The check purported to be from Furst, check number 18871, in the amount of $1,346.28. The bartender cashed the check after it was signed by defendant, a clear finger print was placed on the check,[2] and defendant's social security number was affixed. The check was type-written, made payable to defendant, and included defendant's post office box address in Gillette, Wyoming. In cashing the check, defendant used a Wyoming commercial driver's license as identification, which contained the same post office box address. The record does not reveal whether the post office box was still open, but defendant had lived in Magna for

---

1. . As a convenience to the reader, and because the provisions in effect at the relevant times do not differ materially from the statutory provisions currently in effect, we cite to the most recent statutory codifications throughout this opinion, unless otherwise noted.

2. . Two finger prints were actually placed on the check before it was cashed. The bartender, upon noticing the first finger print was smeared, required the defendant to place a second finger print on the check.

five years. Bill's Lounge deposited the check but was later refused payment as a result of Furst's stop payment order.

¶ 4 The State charged defendant with passing a forged check, in violation of Utah Code Ann. § 76–6–501 (Supp.1999). At trial, the State made a minimal showing in its case-in-chief, attempting to meet the prima facie requirements of forgery [3] through inference. Specifically, Furst's corporate controller testified that company checks had been stolen, that only three individuals were authorized to sign First's checks, and that the signature on check 18871 was not one of the three authorized signatures. Finally, he testified that defendant had never worked for Furst and was not otherwise entitled to have received one of Furst's checks. The State then rested, relying on the jury's prerogative to infer intent to defraud when a forged check is uttered, even without actual proof that defendant knew the check was invalid. Defendant moved to dismiss on the basis of insufficient evidence to establish even a prima facie case of forgery. The motion was denied.

¶ 5 In the defense case, defendant testified that he was a self-employed mechanic working out of his home in Magna; a friend referred one Mike Workman to him; he worked on several vehicles for Workman, at least one of which was a truck with some kind of commercial sign on the door; and Workman paid him with the check defendant later learned had been stolen. Defendant did not dispute that the check was a forgery, but alleged he did not forge it and had no reason to believe it was a forgery when received, as nothing seemed particularly out of the ordinary on the face of the check or in his dealings with Workman.

¶ 6 A jury convicted defendant. He now appeals.

## ANALYSIS

### A. Prima Facie Case

¶ 7 On appeal, defendant's main challenge is to the trial court's denial of his motion to dismiss for insufficient evidence to establish a prima facie case. Utah Code Ann. § 76–6–501(1) (Supp.1999) provides, in relevant part:

(1) A person is guilty of forgery if, with purpose to defraud anyone, or with knowledge that he is facilitating a fraud to be perpetrated by anyone, he:

(a) alters any writing of another without his authority or utters any such altered writing; or

(b) makes, completes, executes, authenticates, issues, transfers, publishes, or utters any writing so that the writing or the making, completion, execution, authentication, issuance, transference, publication or utterance purports to be the act of another, whether the person is existent or nonexistent, or purports to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed.

To be guilty of uttering a forged check, an individual must have "purpose to defraud" or "knowledge that he is facilitating a fraud." [4] Utah Code Ann. § 76–6–501(1) (Supp.1999). In its case-in-chief, the State presented unchallenged evidence that defendant had cashed a forged check at Bill's Lounge and had received money in return, but the State presented no actual evidence of defendant's knowledge that the check he presented was a forgery. The important question before us, then, is whether mere evidence that a check

---

3. . The crime of passing a forged check is traditionally referred to as "uttering a forged instrument" and was distinct from the crime of forgery at common law. *See Reid v. Aderhold,* 65 F.2d 110, 112 (5th Cir.) ("At common law forgery and uttering were different substantive crimes."), *cert. denied,* 290 U.S. 676, 54 S.Ct. 104, 78 L.Ed. 584 (1933). The Utah Code has combined both common law uttering and common law forgery into a single statutory crime called forgery. *See* Utah Code Ann. § 76–6–501 (Supp.1999). *Cf. State v. Oliveira,* 730 A.2d 20, 25–26 (R.I.1999) (explaining why forgery and uttering, although in

same statute, should be treated as two distinct crimes).

4. . All other elements of forgery under Utah Code Ann. § 76–6–501(1) (Supp.1999) are conceded, except that issues regarding the actus reus of the crime were not raised until this appeal. Absent exceptions not applicable here, we will not consider issues raised for the first time on appeal. *See, e.g., State v. Schweitzer,* 943 P.2d 649, 654 n. 3 (Utah Ct.App.1997).

is a forgery, with no indication that the forgery is known to the defendant, is sufficient to establish a prima facie showing of uttering a forged check, given the doctrine that one handling a forged instrument can be assumed to have had purpose to defraud.

■ ¶ 8 This court will uphold a trial court's denial of a motion to dismiss for insufficient evidence if, "upon reviewing the evidence and all inferences that can be reasonably drawn from it, ... some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989). *Accord State v. Davis*, 965 P.2d 525, 535 (Utah Ct.App.1998). If the prosecution has failed to present sufficient evidence to support its case, the trial court should dismiss. *See State v. Smith*, 675 P.2d 521, 524 (Utah 1983). We review for correctness the trial court's conclusion that the evidence established a prima facie case. *See Grossen v. DeWitt*, 982 P.2d 581, 584 (Utah Ct.App. 1999).

¶ 9 Defendant's appeal focuses on the denial of the motion to dismiss at the close of the State's case-in-chief. Accordingly, this court's review of the sufficiency of the evidence is limited to the evidence adduced by the prosecution in its case-in-chief. Specifically, the evidence presented by defendant in his case, and that brought out by the prosecution in cross-examination and in its rebuttal case, are not relevant to our inquiry.

■ ¶ 10 Knowledge or intent is a state of mind generally to be inferred from the person's conduct viewed in light of all the accompanying circumstances. *See Harline v. Barker*, 912 P.2d 433, 442 (Utah 1996); *State v. James*, 819 P.2d 781, 789, 792 (Utah 1991) (holding jury could infer intent from overall circumstances of murder); *State v. Eagle*, 611 P.2d 1211, 1213 (Utah 1980) (allowing jury instruction stating: "A person's state of mind is not always susceptible of proof by direct and positive evidence, and, if not, may ordinarily be inferred from acts, conduct, statements or circumstances."). Because of the difficulty of proving knowledge and intent in a prosecution for forgery, the quantum of evidence the State must produce before an inference of knowledge or intent will arise should not be unrealistically burdensome. But there should be some facts or circumstances from which an inference can logically be drawn before the defendant can be required to mount a defense and prove his lack of knowledge or intent.[5]

■ ¶ 11 We do not think it proper to infer knowledge that an instrument is forged from its mere possession or uttering.[6] The act of possessing a forged instrument and attempting to utter it can be an innocent act which, standing alone, should not automatically give rise to an inference of guilty knowledge. *See Pearson v. State*, 8 Md.App. 79, 258 A.2d 917, 921–22 (Md.Ct.Spec.App.1969). *But see Bieber v. State*, 8 Md.App. 522, 261 A.2d 202, 209 & n. 8 (Md.Ct.Spec.App.1970)

**5.** . At oral argument, we explored with counsel several situations in which one might utter a forged instrument in complete innocence. For example, someone may accept a check from a stranger at a garage sale in payment for an old lamp, cash the check, and later be charged with the uttering variant of forgery because the check proves to have been stolen and forged. It seems peculiar to permit the State to satisfy the prima facie case requirement by allowing fraudulent intent on the part of the lamp seller to be inferred merely because she dealt with an instrument later shown to be fraudulent. It is no answer to suggest that the vendor could take the stand and establish her innocence. Very simply, she should be back home rummaging through the garage getting ready for the next sale rather than spending the day in court and being put to the burden of hiring counsel. In our justice system, the prosecution must prove guilt beyond a reasonable doubt; the defendant need not

prove innocence. And the defendant, whether guilty or innocent, is privileged to remain silent. An inference that springs from thin air lessens the prosecution's burden while chilling the defendant's Fifth Amendment privilege.

**6.** . At the same time, we are not in agreement with our Texas counterparts that intent to defraud or guilty knowledge can never be inferred from passing a forged instrument. *See Parks v. State*, 746 S.W.2d 738, 740 (Tex.Crim.App.1987) (en banc); *Albrecht v. State*, 486 S.W.2d 97, 102–103 (Tex.Crim.App.1972). We believe such an inference should flow from irregularities on the face of the instrument or particular circumstances of the transaction and not from the mere fact that the instrument is subsequently shown to have been forged. *See Parks*, 746 S.W.2d at 745 (Clinton, J., dissenting).

(limiting scope of *Pearson* ). If the prosecution can present no other facts or circumstances to create such additional suspicion as would warrant the inference, there is insufficient evidence from which the jury can reasonably infer knowledge or intent. Otherwise, the prosecution would meet its burden of showing a prima facie case of uttering a forged instrument against everyone in the instrument's chain of possession. In the present case that would include not only the defendant, but also Bill's Lounge which, after all, endorsed and deposited a check later shown to be a forgery, and even the bank that accepted the check from Bill's Lounge and presented it to Furst's bank for payment.

¶ 12 Common sense alone would dictate that something more is required before any inference of fraudulent intent can arise: either a problem with the instrument—the signature does not match the name printed on the check—or incriminating circumstances— defendant took the check for half its value or defendant had been a life-long customer at the same small-town bank on which the check was supposedly drawn and the bank had closed down three years ago. Many cases are consistent with this realization. *See, e.g., People v. Mitchell,* 92 Cal. 590, 28 P. 597, 598 (1891) ("[T]he allegation that [defendant] falsely and knowingly uttered and passed as genuine a false and forged check cannot be construed to mean he knew the check was false and forged at the time he uttered and passed it."); *State v. Satterfield,* 202 Kan. 395, 449 P.2d 566, 567–69 (1969) (holding jury could properly infer knowledge in uttering case given suspicious manner by which defendant came to possess instrument); *Pearson,* 258 A.2d at 922 (holding uttering alone is insufficient to allow inference); *Parks v. State,* 746 S.W.2d 738, 740 (Tex.Ct.App.1987) (requiring proof beyond mere uttering before jury can find knowledge); *Albrecht v. State,* 486 S.W.2d 97, 102 (Tex.Ct.App.1972) (same). Case law from other jurisdictions also suggests the kind of additional evidence from which an inference could arise in an uttering case: the suspicious manner in which the defendant came to hold the instrument, *see Satterfield,* 449 P.2d at 567–69; the flight of the accused upon realizing there was suspicion of the instrument's authenticity, *see Turner v. State,* 6 Md.App. 337, 251 A.2d 383, 384 (Spec.App.1969); or impersonation of a third-person in uttering the check. *See State v. DeGina,* 42 N.C.App. 156, 256 S.E.2d 275, 276 (1979).

 ¶ 13 Notwithstanding the views and concerns expressed above, we are constrained to affirm the ruling of the trial court in the face of binding precedent. Under current Utah law, a person who merely utters a forged instrument can be inferred to have had knowledge of the forgery. *See State v. Williams,* 712 P.2d 220, 223 (Utah 1985).

¶ 14 In *Williams,* the defendant accompanied a friend to a muffler shop in Salt Lake City to pick up his friend's car. *See id.* at 221. When his friend could not pay for the repairs, defendant presented a check to cover the charges. The check was drawn on the business account of a local construction company and was payable to the defendant in the amount of $217.37. Defendant endorsed the back of the check with his own name, placed his social security number on the check, and presented proper identification. The shop cashed the check and gave the defendant money in change. *See id.* The check was dishonored and the defendant was charged with uttering a forged check. At trial, the prosecution presented evidence that the check had been stolen, that the construction company had not given anyone permission to write defendant a check, that it did not owe the defendant any money, and that defendant had never been employed by the construction company. *See id.* The Utah Supreme Court held this was sufficient evidence from which a jury could infer defendant's knowledge that the check was forged. *See id.* at 223.

 ¶ 15 The evidence presented by the prosecution in this case essentially mirrors the evidence presented in *Williams. See id.* The prosecution showed that Furst's 18,000 series checks were stolen, defendant was not an employee of Furst, Furst had not given defendant the check, and no one with authority to issue checks from Furst had signed the check. If the jury in *Williams* could proper-

ly do so, the jury in the instant case could likewise infer knowledge that the check was forged even from the sparse facts adduced in the prosecution's case.[7]

¶ 16 Defendant attempts to distinguish *Williams* by pointing out that no evidence was ever offered about how Williams came to possess the forged check, while in the present case, defendant took the stand and explained his possession of the check. Of course, this distinction is irrelevant. Defendant's testimony came after the motion to dismiss and we are passing on the propriety of that motion. The trial court was asked to rule before defendant took the stand and it could do so only with reference to the evidence then before it. In evaluating the trial court's ruling, we likewise can consider only the evidence introduced by the prosecution in its case-in-chief.

### B. Other Issues

¶ 17 We have carefully considered the other three issues raised by appellant and conclude they are wholly without merit. We decline to address them further. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) (holding that appellate court "need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal"). *See also id.* at 889 ("[I]t is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court."). *Cf. Reese v. Reese*, 984 P.2d 987, 991 (Utah 1999) (to facilitate Supreme Court certiorari review, court of appeals must "at the very least identif[y] the basis for refusing to treat an issue").

### CONCLUSION

¶ 18 Under current Utah law, merely possessing and uttering a forged instrument is a sufficient basis on which a jury may infer defendant's knowledge or purpose to defraud. While we question the wisdom of such an inference, we cannot depart from binding precedent. Accordingly, the trial court correctly rejected defendant's motion to dismiss for insufficient evidence.

¶ 19 Affirmed.

¶ 20 I CONCUR, EXCEPT THAT AS TO SECTION A, I CONCUR ONLY IN THE RESULT: RUSSELL W. BENCH, Judge.

¶ 21 I CONCUR, EXCEPT THAT AS TO SECTION B, I CONCUR ONLY IN THE RESULT: JUDITH M. BILLINGS, Judge.

---

**7.** . While the approach is troubling, it should be noted that Utah is not alone in permitting an inference of fraudulent intent from the mere fact of uttering a forged instrument. *See, e.g., State v. Booton*, 85 Idaho 51, 375 P.2d 536, 539 (1962) ("Evidence showing the forged nature of the instrument and its possession and utterance by the appellant is sufficient to warrant an inference of this specific knowledge, in the absence of a satisfactory explanation of its acquisition and possession."); *Bieber v. State*, 8 Md.App. 522, 261 A.2d 202, 206 (Spec.App.1970) (" '[T]he possession of an instrument recently forged, by one claiming under it, like the possession of goods recently stolen, is evidence against the possessor.' ... [T]he inference makes out a prima facie case which is rebuttable.") (citations omitted); *State v. Woods*, 157 W.Va. 947, 206 S.E.2d 509, 514–15 (1974) (permitting jury instruction that stated "unexplained possession of a forged instrument by one who endeavors to obtain money thereon is prima facie evidence that such person forged the instrument").