**2015 UT App 103**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
STEPHEN DALE BINGHAM,
Defendant and Appellant.

Opinion
No. 20130782-CA
Filed April 23, 2015

Fifth District Court, Cedar City Department
The Honorable G. Michael Westfall
No. 131500287

Matthew D. Carling, Attorney for Appellant

G. Tyler Romeril, Attorney for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE A. TOOMEY concurred.

VOROS, Judge:

¶1     After a bench trial, Stephen Dale Bingham was convicted of stalking, a class A misdemeanor. The trial court sentenced Bingham to nine months in jail and imposed a fine of $1,000. Bingham appeals his conviction. We affirm.

BACKGROUND[1]

¶2 The trial court relied on three separate incidents to find Bingham guilty of stalking. The first incident occurred on or about May 22, 2013, after Bingham and his wife (Wife) had separated. After receiving a text message from Bingham telling her "to come and get [her] crap out of the middle of the kitchen," she came home to find her belongings thrown in a pile in her kitchen. Wife called the police and filed a police report. Her initial reaction was to think, "What an ass." But the incident left her fearful, she testified, because "[w]ith all [her] belongings in the kitchen, you could tell that there was rage[,] there was purpose in doing it."

¶3 The second incident occurred about a week later, when Bingham approached Wife at her workplace. Wife told Bingham, "I'm going to call security if you don't leave," to which Bingham replied, "Go ahead." She did. In the meantime, Bingham walked away and "was talking to [her] boss, harassing [her] supervisor." When a security officer arrived, Bingham said he would not leave and that he would follow Wife. The security officer removed Bingham from the building. Later, when it was time for Wife to leave, a security officer walked her out to her car to "make sure [Bingham] was not following [her]." Finally, Wife testified that "with me having to have security walk me out, I was scared. I wanted him to leave me alone."

¶4 The final incident occurred the next day. Wife had just leased a new apartment near her place of work. After leaving the

---

1. "When reviewing a bench trial, '[w]e recite the facts from the record most favorable to the findings of the trial court.'" *State v. Layman*, 953 P.2d 782, 784 n.1 (Utah Ct. App. 1998) (alteration in original) (quoting *State v. Moosman*, 794 P.2d 474, 476 (Utah 1990)).

rental office, Wife and a friend drove straight to her new apartment a few blocks away. When she arrived, she walked to the door of the apartment, heard a motorcycle, and turned to see Bingham. Wife testified that approximately seven minutes had passed between signing the lease and seeing Bingham. Seeing Bingham concerned and upset Wife because she wanted to keep her new home private and "didn't want to be harassed." After seeing Bingham, Wife got back into her car with her friend. Wife confronted Bingham from inside her car and told him to leave her alone. She also called 911 and asked 911 dispatch to send Bingham's parole officer over. Bingham's parole officer and another officer from Adult Probation and Parole responded to the call, as did a Cedar City police officer. The police officer arrested Bingham.

¶5 Bingham was charged with stalking under Utah Code section 76-5-106.5. At his arraignment, Bingham pled not guilty and the matter was set for a bench trial. At the close of the State's evidence, Bingham moved for a directed verdict, which the trial court denied. After Bingham presented his defense, the trial court found Bingham guilty and made specific findings.

¶6 With respect to the first incident, the trial court found Wife's testimony credible and found that the incident "would cause a reasonable person to fear for their safety or suffer emotional distress." With respect to the second incident, the trial court found that Bingham's conduct left Wife "emotionally distressed or fearful" and that otherwise "there would have been no reason [for security] to escort her out." With respect to the third incident, the trial court found that a "reasonable person would be emotionally distressed" as a result of Bingham's conduct because "it's just too big of a coincidence that [Wife] gets a key to a new place; she goes there; and suddenly [Bingham's] there." The trial court made no express finding on mental state. But when asked, "Isn't it true that you know that you scare [Wife] with the repeated attempts you've made to

make contact with her?" Bingham replied, "Yes." Ultimately the trial court found "proof beyond a reasonable doubt that . . . [Bingham] is guilty of stalking."

ISSUES ON APPEAL

¶7    Bingham asserts four claims of error on appeal. First, he contends that the evidence did not establish that he engaged in a course of conduct under Utah Code section 76-5-106.5 as required for his stalking conviction.[2] Second, he contends that the trial court erred by denying his directed verdict based on the sufficiency of the evidence. Third, he contends that the trial court erred by failing to make appropriate findings on the element of intent. Finally, he contends that trial counsel rendered ineffective assistance by not introducing medical evidence.

ANALYSIS

I. Sufficiency of the Evidence

¶8    Bingham contends that the evidence presented at trial was insufficient to prove that the three incidents amounted to a course of conduct that would support his stalking conviction. "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if [we] otherwise reach[] a

---

2. In his brief, Bingham framed this issue as a question of statutory construction, contending that the court had misinterpreted the stalking statute by finding that Bingham's behavior satisfied the statutory elements of stalking. However, at oral argument, Bingham clarified that the gravamen of his claim is that the evidence was insufficient to support a finding of guilty. We address Bingham's first issue accordingly.

definite and firm conviction that a mistake has been made." *State v. Gordon*, 2004 UT 2, ¶ 5, 84 P.3d 1167 (alterations in original) (citation and internal quotation marks omitted). Thus, when "reviewing a bench trial for sufficiency of the evidence, we require that the weight of the evidence, discounting questions of credibility and demeanor, not oppose the verdict." *State v. Goodman*, 763 P.2d 786, 787 (Utah 1988).

¶9     Under the Utah stalking statute, one commits stalking by intentionally or knowingly engaging in a course of conduct that would cause a reasonable person to fear or experience emotional distress:

> [a] person is guilty of stalking who intentionally or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person . . . to fear for the person's own safety . . . or . . . to suffer other emotional distress.

Utah Code Ann. § 76-5-106.5(2) (LexisNexis 2012). Here, to conclude that Bingham engaged in a course of conduct, the trial court had to find that Bingham engaged in two or more qualifying acts directed toward a specific person. An actor commits a qualifying act when the actor:

> (A) approaches or confronts a person;
> (B) appears at the person's workplace or contacts the person's employer or coworkers;
> (C) appears at the person's residence . . . or enters property owned, leased, or occupied by a person; . . . or
> (F) uses a computer, the Internet, text messaging, or any other electronic means to commit an act that is a part of the course of conduct.

*Id.* § 76-5-106.5(1)(b)(ii). "As the statute makes clear, a single isolated act cannot qualify as a course of conduct." *Butters v. Herbert*, 2012 UT App 329, ¶ 12, 291 P.3d 826. Rather, to qualify as a course of conduct, the statute requires "two or more acts directed at or toward a specific person." Utah Code Ann. § 76-5-106.5(1)(b). Accordingly, "[s]talking, by its very nature, is an offense of repetition and can be accomplished only if [two or more] acts directed at a specific person are linked together." *Butters*, 2012 UT App 329, ¶ 12 (citation and internal quotation marks omitted).

## A.      The First Incident

¶10     Bingham contends that the first incident does not support a finding that he engaged in a course of conduct, because he still lived with Wife at the time and thus had a right to enter her apartment. Bingham points out that the trial court did not make an express factual finding as to whether Bingham and Wife still lived together at the time. This argument seems to presume that cohabiting with the victim is a defense to the crime of stalking. But the stalking statute actually elevates the offense if the perpetrator "has been or is at the time of the offense a cohabitant . . . of the victim." *See* Utah Code Ann. § 76-5-106.5(7)(e).

¶11     In any event, sufficient evidence supported the trial court's findings with respect to the first incident. Wife testified that Bingham threw her belongings into a pile on the kitchen floor, that he sent her a text message telling her to "come get [her] crap out of the kitchen," that she called the police, and that she felt fearful as a result of the incident. Bingham denied any part in the incident. The trial court found Wife's testimony believable.

¶12     When reviewing a bench trial "we accord deference to the trial court's ability and opportunity to evaluate credibility and demeanor." *Goodman*, 763 P.2d at 787; *see also State v. Lafferty*, 2001 UT 19, ¶ 45, 20 P.3d 342 ("We give deference to the trial

court's factual findings because of its superior position to assess credibility."). Viewed through this lens, the trial court's finding is not against the clear weight of the evidence. The evidence supports the finding that Bingham "enter[ed] property owned, leased, or occupied by [Wife]," Utah Code Ann. § 76-5-106.5(1)(b)(ii)(C), that he "use[d] . . . text messaging . . . to commit an act that is a part of the course of conduct," *id.* § 76-5-106.5(1)(b)(ii)(F), and that he knew or should have known that his conduct would have caused a reasonable person in Wife's circumstances to fear for her own safety, or suffer other emotional distress, *id.* § 76-5-106.5(2).

¶13 Accordingly, sufficient evidence supports a finding that the first incident occurred, that Bingham was responsible for its occurrence, and that he knew or should have known the effect it would have on a reasonable person.

B. The Second Incident

¶14 Bingham contends that the second incident cannot support a finding of a course of conduct because he had a right to visit Wife's workplace. Bingham asserts that "[t]he trial court erroneously held Bingham's actions against him for declining the invitation to leave the [workplace] when asked" because he "could rightfully decline to leave." Bingham also asserts that "[t]here were no allegations that he was a disruption or any evidence presented as to how [Wife] reacted to the circumstances."

¶15 Bingham's argument seems to assert two points: (1) that the trial court's interpretation of the statute contravened his constitutionally guaranteed freedom of movement by criminalizing visiting a public place, and (2) that even if the statute fairly reaches behavior occurring in a public place, insufficient evidence existed to show Bingham's conduct "would cause a reasonable person to fear for [their] own safety . . . or to

suffer other emotional distress." Utah Code Ann. § 76-5-106.5(2) (LexisNexis 2012).

¶16    We decline to address Bingham's first point. Bingham did not raise an as-applied constitutional challenge to the stalking statute in his opening brief. While he does raise such a challenge in his reply brief, we decline to consider "issues raised by an appellant in the reply brief that were not presented in the opening brief." *Brown v. Glover*, 2000 UT 89, ¶ 23, 16 P.3d 540. Even if we could construe Bingham's opening brief as raising an as-applied challenge, neither brief adequately analyzes the issue. "To satisfy our adequate briefing requirement, a party's brief must contain meaningful legal analysis. Specifically, [a] brief must go beyond providing conclusory statements and fully identify, analyze, and cite its legal arguments." *Hess v. Canberra Dev. Co.*, 2011 UT 22, ¶ 25, 254 P.3d 161 (alteration in original) (citations and internal quotation marks omitted). Accordingly, Bingham's constitutional challenge fails in any event. *See State v. Worwood*, 2007 UT 47, ¶ 19, 164 P.3d 397.

¶17    Bingham's second argument is that the State provided insufficient evidence "as to how [Wife] reacted to the circumstances" of the second incident. However, a finding of stalking does not require any particular reaction on the part of the victim. "Under the [s]talking [s]tatute's solely objective standard, the subjective effect of the [actor's] conduct on the [victim] is irrelevant." *Baird v. Baird*, 2014 UT 08, ¶ 25, 322 P.3d 728. The statute requires proof only that the actor's conduct would cause a reasonable person in the victim's circumstances to fear for his or her own safety or suffer other emotional distress. *See id.*; *see also* Utah Code Ann. § 76-5-106.5(1)(e) (defining reasonable person to mean "a reasonable person in the victim's circumstances").

¶18    The evidence here satisfied that standard. When Bingham appeared at Wife's workplace, he refused to leave when

requested and told her he would follow her. A security officer removed Bingham from the premises and escorted Wife to her car at the end of her shift to ensure that Bingham was not following her. Further, when the prosecutor asked Bingham, "Isn't it true that you know that you scare [Wife] with the repeated attempts you've made to make contact with her?" Bingham replied, "Yes." Moreover, Wife testified that "with [her] having to have security walk [her] out, [she] was scared."

¶19    We are not convinced that the trial court's findings that Bingham "appear[ed] at [Wife's] workplace," Utah Code Ann. § 76-5-106.5(1)(b)(ii)(B), and that he "kn[ew] or should [have] know[n] that [doing so] would cause a reasonable person to fear for [their] own safety . . . or to suffer other emotional distress," *id.* § 76-5-106.5(2), contravenes the clear weight of the evidence. Because the second incident, in tandem with the first, qualifies as a course of conduct, the evidence presented at trial was sufficient to support Bingham's stalking conviction. *See id.*

C.    The Third Incident

¶20    Bingham contends that the third incident cannot support a finding of a course of conduct, because Bingham arrived on Wife's street by accident—i.e., insufficient evidence exists to find that he intended to confront Wife at her new residence. Bingham further asserts that during the third incident Wife confronted him (rather than vice versa), a fact that, he argues, refutes the court's finding that the incident would cause a reasonable person to experience the "fear" or "emotional distress" "necessary to find stalking had occurred."

¶21    We disagree. Within minutes of Wife's signing the lease and driving a few blocks to her new apartment, Bingham showed up. When she saw Bingham in front of her apartment on his motorcycle, she testified that "[h]e saw me. I saw him. He pulled his motorcycle over and [made a U-turn] and parked in front of the apartment." She got in her car (where a friend was

seated), pulled up next to Bingham, told him to leave her alone, and called 911.

¶22 The trial court found that under the circumstances, "a reasonable person would be emotionally distressed," and that "it's just too big of a coincidence"—a phrase we understand to express disbelief—that Bingham appeared at Wife's residence by accident. Thus, we are not convinced that the finding that Bingham "appear[ed] at [Wife's] residence," Utah Code Ann. § 76-5-106.5(1)(b)(ii)(C), and that he knew or should have known his appearance would have caused a reasonable person to suffer emotional distress, *id.* § 76-5-106.5(2)(b), goes against the clear weight of the evidence.

¶23 In sum, sufficient evidence exists to support the finding that the three incidents established a course of conduct under the statute that Bingham intentionally or knowingly engaged in that conduct and that he knew or should have known that his conduct would have caused a reasonable person in Wife's circumstances to fear for her safety or to suffer other emotional distress. Accordingly, sufficient evidence supports Bingham's stalking conviction.

## II. Directed Verdict

¶24 Bingham contends that the trial court erred in denying his motion for a directed verdict based on insufficiency of the evidence. Motions for a directed verdict are generally filed only in jury trials. "[T]he term 'directed verdict' applies when the judge 'orders the jury to return a verdict' for the moving party because, as a matter of law, 'the party with the burden of proof has failed to make out a prima facie case.'" *Grossen v. DeWitt*, 1999 UT App 167, ¶ 7, 982 P.2d 581 (quoting *Black's Law Dictionary* 1560 (6th ed. 1990)). Bingham moved for a directed verdict, but because this was a bench trial we construe his motion as a motion to dismiss. *See Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 9, 20 P.3d 388 (construing a motion for a directed

verdict in a civil bench trial as a motion for involuntary dismissal).

¶25   "A defendant's motion to dismiss for insufficient evidence at the conclusion of the State's case in chief requires the trial court to determine whether the defendant must proceed with the introduction of evidence in his defense." *State v. Noren*, 704 P.2d 568, 570 (Utah 1985); *see also* Utah Code Ann. § 77-17-3 (LexisNexis 2012); Utah R. Crim. P. 17(p). "A trial court's grant or denial of a motion to dismiss is a question of law," and we review the trial court's ruling "for correctness, giving no deference to the decision of the trial court." *State v. Arave*, 2011 UT 84, ¶ 25, 268 P.3d 163 (citation and internal quotation marks omitted).

¶26   We have already concluded that sufficient evidence supports Bingham's stalking conviction. The State introduced this evidence in its case in chief. Accordingly, the trial court correctly denied the motion and ruled that Bingham "must proceed with the introduction of evidence in his defense." *See Noren*, 704 P.2d at 570.

¶27   We therefore hold that the trial court did not err in denying Bingham's motion to dismiss.

### III. Findings on Intent

¶28   Bingham contends that the trial court erred in failing to make findings with respect to "whether Bingham intentionally or knowingly engaged in a course of conduct that violated Utah Code [section] 76-5-106.5(2)." Where the law requires findings, we may under appropriate circumstances assume that the court found the facts in accord with its decision:

> [I]n cases in which factual issues are presented to and must be resolved by the trial court but no findings of fact appear in the record, we assume

that the trier of facts found them in accord with its decision, and we affirm the decision if from the evidence it would be reasonable to find facts to support it.

*State v. Ramirez*, 817 P.2d 774, 787 (Utah 1991) (citation, footnote, and internal quotation marks omitted). "If the ambiguity of the facts makes this assumption unreasonable, however, we remand for a new trial." *Id.* at 788.

¶29   Utah Code section 76-5-106.5(2) required the State to show, in relevant part, that Bingham "intentionally or knowingly engage[d] in a course of conduct directed at a specific person." "Knowledge or intent is a state of mind generally to be inferred from the person's conduct viewed in light of all the accompanying circumstances." *State v. Kihlstrom*, 1999 UT App 289, ¶ 10, 988 P.2d 949 (citing *Harline v. Barker*, 912 P.2d 433, 442 (Utah 1996); *State v. James*, 819 P.2d 781, 789, 792 (Utah 1991) (holding a jury could infer intent from overall circumstances of murder); *State v. Eagle*, 611 P.2d 1211, 1213 (Utah 1980) (allowing a jury instruction stating that "[a] person's state of mind is not always susceptible of proof by direct and positive evidence, and, if not, may ordinarily be inferred from acts, conduct, statements or circumstances")).

¶30   The State presented no direct evidence of Bingham's state of mind when he engaged in the course of conduct, and the trial court made no express findings with respect to Bingham's mental state. However, the trial court found Bingham guilty beyond a reasonable doubt of stalking. We assume that the court, as "the trier of facts[,] found [the facts] in accord with its decision," *Ramirez*, 817 P.2d at 787, specifically, that it "inferred from [Bingham's] conduct viewed in light of all the accompanying circumstances," *Kihlstrom*, 1999 UT App 289, ¶ 10, that Bingham "intentionally or knowingly engage[d] in a course of conduct directed at a specific person," Utah Code Ann.

§ 76-5-106.5(2) (LexisNexis 2012). Further, given all the evidence presented in this case, evidence we have determined sufficient to support Bingham's conviction, no ambiguity of fact makes this assumption unreasonable. *See Ramirez*, 817 P.2d at 787.

¶31 While Bingham claimed that he suffered from dementia, he claimed only that the dementia affected his ability to remember. He never claimed that his dementia prevented him from forming the requisite intent to engage in a course of conduct under the stalking statute. However, even if we were to construe Bingham's argument in that fashion, we would nevertheless conclude that the evidence of Bingham's dementia does not create an ambiguity requiring a remand for additional fact-finding.

¶32 Accordingly, we hold that Bingham's "conduct viewed in light of all the accompanying circumstances," *Kihlstrom*, 1999 UT App 289, ¶ 10, allowed the trial court to find—and that the court's ruling reflects that it did in fact find—that Bingham "intentionally or knowingly engage[d] in a course of conduct directed at a specific person," Utah Code Ann. § 76-5-106.5(2).

IV. Ineffective Assistance of Counsel

¶33 Finally, Bingham contends that he received ineffective assistance of counsel because his trial counsel failed to present evidence of the effects of Bingham's dementia.

¶34 "[T]o demonstrate ineffective assistance of counsel, [Bingham] must satisfy the two-prong test established in *Strickland v. Washington . . . .*" *State v. Featherhat*, 2011 UT App 154, ¶ 34, 257 P.3d 445. Under *Strickland*, Bingham "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984). "When reviewing ineffective assistance of counsel claims, we strongly presume that trial counsel provided adequate assistance and that any action complained of was sound trial strategy."

*State v. Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082. Further, "[t]o show prejudice . . . , [Bingham] bears the burden of proving that counsel's errors actually had an adverse effect on the defense and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citation and internal quotation marks omitted). Finally, "proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." *Id.* (citation and internal quotation marks omitted).

¶35    We conclude that Bingham has failed to establish either deficient performance or prejudice. Merely arguing that an expert witness should have been called "fails to establish deficiency or prejudice because [Bingham] does not identify the witness[] or the content of [his or her] expected testimony." *State v. Gunter*, 2013 UT App 140, ¶ 33, 304 P.3d 866 (citing *Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993)). Bingham's ineffectiveness claim rests on a single citation to the Mayo Clinic's website describing general symptoms of dementia. The record does not disclose what an expert would have testified or how that testimony would have related to Bingham's criminal culpability. Without seeing the purportedly crucial expert testimony we are in no position to determine either that any reasonable trial counsel would have offered the testimony or that the testimony was reasonably likely to have altered the outcome of trial. *See id.*

¶36    Accordingly, Bingham has not shown that his trial counsel rendered ineffective assistance of counsel.

CONCLUSION

¶37    The judgment of the trial court is affirmed.

_____