2017 UT App 181

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PRESTON MICHAEL COWLISHAW,
Appellant.

Opinion
No. 20160477-CA
Filed September 28, 2017

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 151901373

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and DAVID N. MORTENSEN concurred.

TOOMEY, Judge:

¶1 At the conclusion of a bench trial, Preston Michael Cowlishaw was convicted of one count of kidnapping, a second degree felony, Utah Code Ann. § 76-5-301 (LexisNexis 2012), one count of failure to respond to an officer's signal to stop, a third degree felony, Utah Code Ann. § 41-6a-210 (LexisNexis 2014), and one count of theft, a second degree felony, Utah Code Ann. § 76-6-404 (LexisNexis 2012); *see also id.* § 76-6-412(1)(a)(ii). Cowlishaw contends the trial court erred in finding him guilty on all three counts because the victim (Victim) did not directly identify him as the perpetrator of the crimes. We affirm.

BACKGROUND

¶2     Because Cowlishaw appeals his verdict from a bench trial, we recite the facts from the record in the light most favorable to the findings of the trial court, *see State v. Bingham*, 2015 UT App 2013, ¶ 2 n.1, 348 P.3d 730, and "present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611.

¶3     Late one afternoon in June 2015, Cowlishaw visited the household of Victim, her stepfather (Stepfather) and her mother (Mother). Cowlishaw knew Mother and Stepfather because they often provided a place for his mother to sleep. Victim, who had met Cowlishaw a few times, agreed to "go get food" with him, and Cowlishaw agreed to take Victim to the grocery store afterward. Cowlishaw went to the drive-through of a fast food restaurant, where Victim ordered a pie and Cowlishaw ordered a cup of water. Cowlishaw began driving again, passing the grocery store near Victim's house, when Victim asked him why he was not taking her home or to the grocery store. Cowlishaw responded that "he wanted to go on a drive and get to know [her] more."

¶4     During the drive, Cowlishaw asked Victim if he could use her cell phone because he did not have one and wanted to make a phone call. Instead of making a call, Cowlishaw pocketed the phone after removing the battery and "wouldn't give it back" informing Victim "it was a distraction." Cowlishaw then started speeding and "doing donuts." Victim thought that the erratic driving was meant to scare her.

¶5     Over the next few hours, Cowlishaw continued to refuse to drive Victim home, while Victim made attempts to "calm the situation down." At one point, Cowlishaw returned Victim's phone and allowed her to exit the car after she agreed to take off her shoes. Victim sent a text message, saying, "Help, I have been

kidnapped." Victim also called Mother, but before she could tell Mother where she was, Cowlishaw grabbed the phone and again removed the battery. Even though Victim was frightened, she returned to the car because Cowlishaw said he would take her home if she "just [got] back in the car." She did not think something like this could happen with "him knowing [her] family."

¶6 Once he had coaxed Victim back into the car, Cowlishaw continued to drive away from her house. He drove up to a toll booth, and when he stopped, Victim jumped out of the car, hoping she would find someone to help her. The toll booth attendant (Attendant) saw Victim exit the car quickly and run into the office building. Attendant called the police because she was "very concerned" that Victim was "in distress" and no one was inside the office building to help her. Attendant witnessed Victim get back into the car, but was uncertain whether this was voluntary because she was busy assisting other cars through the toll booth.

¶7 A deputy police officer (Deputy) responded to the dispatch call based on the information provided by Attendant. Deputy drove toward the toll booth, watching for the grey passenger car Attendant had identified. When he arrived, Deputy noticed a grey car and immediately pulled behind it, signaling the driver to pull over. Cowlishaw told Victim, "This can't happen. This won't happen[,]"and sped through a construction zone, running a red light before turning down an unmarked path where he crashed the car into a tree. Cowlishaw crawled over Victim and attempted to pull her out of the car before the police arrived, but he ran away before he could get her out.

¶8 When Deputy found Victim near the crashed car, she told him that she knew the driver's first name, Preston, but she did not know his last name. Other officers arrived on the scene and,

during Victim's interview, one officer called Stepfather, who provided Cowlishaw's "full name, including the spelling." They radioed an "attempt to locate" for Preston Cowlishaw. The following day, the South Salt Lake Police Department arrested Cowlishaw, and Deputy took him into custody.

¶9    The officers also radioed the license plate number of the crashed car. Dispatch informed Deputy that it was registered to an owner (Owner) who reported the car stolen earlier that day. The police contacted Owner and informed him his car had been taken to an impound lot. Owner went to look at his vehicle and found that it was "totaled."

¶10    The officers collected evidence from the car, and a crime scene investigator (Investigator) obtained fingerprints from the exterior of the driver's window and from a cup in the center console. After processing the fingerprints from the car and cup, Investigator found fifteen points of comparison with Preston Cowlishaw's fingerprints and concluded the fingerprints matched those of Preston Cowlishaw.

¶11    After a bench trial, Cowlishaw was convicted on all three charges. The court sentenced him to one to fifteen years in prison for the charge of kidnapping, zero to five years for the failure to respond to an officer's signal to stop, and one to fifteen years for the charge of theft. All three sentences were to run concurrently. Cowlishaw appeals.

## ISSUES AND STANDARD OF REVIEW

¶12    Cowlishaw contends the evidence was insufficient to establish his identity as the perpetrator of the three crimes.[1]

---

1. Cowlishaw raised several additional issues on appeal: (1) the trial court erred in denying his motion for a directed verdict;

(continued…)

When reviewing the sufficiency of the evidence supporting a conviction in a bench trial, this court "must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." *State v. Larsen*, 2000 UT App 106, ¶ 10, 999 P.2d 1252 (citation and internal quotation marks omitted). This court "will only reverse if the trial court's findings were clearly erroneous." *Salt Lake City v. Maloch*, 2013 UT App 249, ¶ 2, 314 P.3d 1049 (citation omitted). Additionally, when the "trial court's findings include inferences drawn from the evidence, we will not take issue with those inferences unless the logic upon which their extrapolation from the evidence is based is so flawed as to render the inference clearly erroneous." *State v. Briggs*, 2008 UT 75, ¶ 11, 197 P.3d 628 (citation and internal quotation marks omitted).

---

(…continued)
(2) the trial court erred in rendering a guilty verdict because "fingerprint evidence has come into large disrepute;" (3) the trial court erred in rendering its verdict because the State did not present evidence of intent for the theft charge; and (4) the identification of Cowlishaw's last name at trial was inadmissible hearsay. None of these were preserved. For example, Cowlishaw's counsel never moved for a directed verdict and did not object to the other claimed errors at trial. "When a party raises an issue on appeal without having properly preserved the issue below, we require that the party articulate an appropriate justification for appellate review, . . . specifically, the party must argue either plain error or exceptional circumstance." *State v. Winfield*, 2006 UT 4, ¶ 14, 128 P.3d 1171 (citation and internal quotation marks omitted). Because these issues are unpreserved and Cowlishaw did not make an argument for plain error or exceptional circumstance, we will not address them on appeal.

ANALYSIS

I. Kidnapping and Failure to Respond to the Officer's
Signal to Stop

¶13    Cowlishaw contends that he should not have been convicted because "no witness *specifically* identified [him] as the person who kidnapped [Victim], [or] who failed to respond to the police." (Emphasis added.) "'It is well-settled that an essential element that the government must prove beyond a reasonable doubt is the identification of a defendant as the person who perpetrated the crime charged.'" *State v. Isom*, 2015 UT App 160, ¶ 23 n.2, 354 P.3d 791 (quoting *United States v. Boyd*, 447 Fed. Appx. 684, 690 (6th Cir. 2011)). But this court has determined that "'identification can be inferred from circumstantial evidence; therefore, direct, in-court identification is not required.'" *State v. Neilson*, 2017 UT App 7, ¶ 22, 391 P.3d 398 (quoting *Isom*, 2015 UT App 160, ¶ 23 n.2).

¶14    In *Neilson*, the defendant challenged his conviction because "the State neglected to have any witness identify him in the courtroom as the perpetrator of any of the charged offenses." *Id.* ¶ 20 (brackets and internal quotation marks omitted). But we explained, "[T]he identity of the perpetrator was never an issue at trial," evidenced by the fact that Neilson never suggested someone else committed the crime. *Id.* ¶ 22. Indeed, during the investigation of the crime, the victim told the police the first name of her abuser, and "Neilson's identity as the perpetrator was further corroborated by Father's testimony . . . that Father and Neilson had been good friends for several years and that Father and [the victim] stayed at Neilson's house for several days at a time on multiple occasions." *Id.* Thus, there was "sufficient circumstantial evidence of Neilson's identity as the perpetrator of the crimes charged." *Id.*

¶15    As was the case in *Neilson*, there is circumstantial evidence that shows Victim identified Cowlishaw as the defendant. Cowlishaw is correct that on the night of the kidnapping Victim did not know his last name and instead provided the officer with what she believed the last name "sound[ed] like." But during Victim's interview, the officers called Stepfather, who provided Cowlishaw's "full name, including the spelling." The officers then radioed an "attempt to locate" for "Preston Cowlishaw," who was arrested the following day.

¶16    At trial, the State asked Victim whether she knew "the defendant, Preston Cowlishaw," before the day of the kidnapping. Victim responded that she met him a few times at her house. Then, the State asked Victim, "[A]nd the defendant is in the courtroom today; is that correct?" Victim responded, "Yes." The testimony of Victim and the investigating officers show that Mother and Stepfather knew Cowlishaw, as they often provided a place for his mother to sleep and had seen him on numerous occasions. In addition, on cross-examination, Victim responded that she returned to the car after Cowlishaw let her out because "he was somebody that [she] knew from [her] step-dad. [She] thought [she] could trust him. He said he would take [her] home, and [she] just wanted to go home."

¶17    Although Victim did not use Cowlishaw's full name when the officers first interviewed her and "never pointed him out" at trial, Cowlishaw's assertion that there was "no identification [made] at all" is not persuasive.[2] As we have discussed, an in-court identification is not required where circumstantial evidence establishes the defendant's identity as

_____

2. Although there is no requirement for a formal, in-court identification, the better practice would be to ask the witness to point to, or describe, the defendant present in the courtroom.

the person who perpetrated the crime charged. *See Neilson*, 2017 UT App 7, ¶ 22. Here, the evidence was sufficient to show that Victim knew Cowlishaw prior to her kidnapping and there was no suggestion at trial that the kidnapping or failure to respond to the officer's signal to stop "may have been perpetrated by someone else."[3] *See id.*

¶18     Cowlishaw also argues that, while Victim "agreed that the 'defendant' was in the courtroom, she did not indicate whether the defendant was Mr. Cowlishaw." Further, "[Victim] could have picked someone else (not Mr. Cowlishaw) in the courtroom as the person in the vehicle, believing that person was the defendant . . . [o]r she could have been agreeing that the defendant was present, but not agreeing that the defendant was the person who committed the crime." We disagree. The questions the State asked Victim do not support the assertion that she identified someone else as the defendant.

---

3. Cowlishaw argues that he "consistently argued that he did not commit the crime." This is not the case. Defense counsel argued in closing that because there was no direct, in-court identification there was not sufficient evidence to establish that Cowlishaw committed the crimes. He did not argue his client did not commit the crimes. Rather, defense counsel posited an alternative theory during closing arguments that placed Cowlishaw in the stolen vehicle with Victim. Under this theory, Defense counsel suggested Victim and Cowlishaw *knew each other*, that a car was taken[,] . . . [they] decided to go out that evening, *in this stolen vehicle*, and they went out for the sole purpose of using drugs." (Emphases added.) Defense counsel claimed, "This was a voluntary joy ride these individuals went on[.]" Defense counsel then urged the court to "consider strongly [this] theory in that [his] client is not guilty of at least . . . the kidnapping." This alternative theory appears to concede that Cowlishaw was sufficiently identified.

¶19    Because there was sufficient evidence to support that Cowlishaw committed the kidnapping offense, this evidence also placed Cowlishaw in the car and provided the identity of the person who failed to stop at the officer's signal. We conclude the trial court did not err in finding Cowlishaw guilty of kidnapping and failure to respond to the officer's signal to stop.

## II. Theft

¶20    Cowlishaw also contends he should not have been convicted of theft for two reasons. First, the State failed to "identify the car stolen as the same car recovered." Second, "no witness *specifically* identified Mr. Cowlishaw as the person who . . . stole a motor vehicle." (Emphasis added.) We disagree with both contentions.

¶21    Cowlishaw argues he should not have been convicted of theft because the State failed to link the car recovered at the scene of the crash as Owner's car. Cowlishaw did not make this argument at trial, but the court addressed the issue sua sponte, and it is therefore preserved for appeal. *See Helf v. Chevron U.S.A. Inc.*, 2015 UT 81, ¶ 42, 361 P.3d 63 (stating that preservation is satisfied "[w]here a [trial] court itself raises and then resolves an issue sua sponte, [because] it obviously had an opportunity to rule on the issue").

¶22    After closing arguments, the court stated, "I think the defense raises an interesting argument that [Owner] had never identified the car that we see in the photographs." Defense counsel did not make this argument. Rather, he commented that the photograph exhibits "show a vehicle that was not at all described by [Owner]," in reference to the garbage inside the car to support his argument that Cowlishaw and Victim were using drugs. He explained, "These pictures look like you would see in cars that people are living in, that are using [drugs] in. Garbage strewn everywhere. My theory of this case is . . . that [Victim]

and [Cowlishaw] went out, started using [drugs] and drove around. . . . [Owner] testified that this garbage in his vehicle was not there when it was stolen[.]" But nevertheless, the court rejected the notion that Owner had not identified the car because there was "compelling evidence" that suggested the car the police recovered belonged to Owner, and found Cowlishaw guilty of theft.

¶23 Cowlishaw argues that because Owner did not identify the car in the photographs as his and testified that he owned a "sky blue" car, while three witnesses testified the car was "silver or grey," the State failed to "link[] the two [cars] together." The State must "definitely identify the goods found in the defendant's possession as the goods which were charged to have been stolen before the jury may draw an inference of guilt based upon proof of possession by the defendant." *State v. Knill*, 656 P.2d 1026, 1028 (Utah 1982) (citation omitted). It appears that Cowlishaw's argument is that the State must use direct evidence to "definitely identify the goods." *See id.* He argues that even though the license plate on the crashed car belonged to Owner this "does not prove the cars were the same: it proves that [Owner's] *plate* was on the [car] at the scene." Cowlishaw asserts, "It is fairly common for people to steal license plates and put them on another car and absent more evidence . . . [this] does not confirm the two cars were the same." We disagree.

¶24 Under rule 901(a) of the Utah Rules of Evidence, in order to "satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Utah R. Evid. 901(a). Identification of evidence is satisfied where the proponent describes the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Id.* R. 901(b)(4).

¶25     In this case, the trial court ruled that "while [Owner] may not have identified the photographs . . . based on the totality of the evidence, there's no question that the car" belonged to Owner. The court noted that the police contacted Owner when they found his car, Owner went to the impound lot to look at it, and then described the appearance, model, and color of the car at trial, "which [was] consistent with the . . . car that we have in the photographs." And in closing, defense counsel asked the court to "consider strongly" his theory that Cowlishaw was not guilty of the kidnapping, and instead that Victim and Cowlishaw went on a "voluntary joy ride[,]" even though this argument "place[d] [his] client directly in a *stolen* vehicle, and it place[d] him at the scene of the crash." (Emphasis added.) The court concluded there was "[no] question that the defendant was the one involved in the theft of this motor vehicle." We conclude this evidence was sufficient for the trial court to find that the car recovered at the scene belonged to Owner.

¶26     Cowlishaw also contends that the State failed to "specifically identify him" as the thief because no one pointed to him as the defendant at trial. He argues that Owner "did not see who took the car," and the State failed to identify him at trial as the thief. We disagree.

¶27     As previously discussed, there was sufficient circumstantial evidence presented at trial to identify Cowlishaw as the kidnapper. *See supra* ¶¶ 15–19. This also provided sufficient evidence to place Cowlishaw in the car that failed to respond to an officer's signal to stop, *see supra* ¶ 19, which is the same car that was found at the scene of the crash. Deputy checked the car's license plate and discovered that the car was reported stolen earlier that day. In addition, at trial, the State presented fingerprint evidence and an expert witness to discuss the fingerprint findings. The expert explained that the police obtained two fingerprints from the car: one from the cup in the center console and the other from the exterior of the driver's

door window. Both sets of fingerprints matched Cowlishaw's fingerprints. When comparing the fingerprints taken from the car with Cowlishaw's fingerprints, the expert found fifteen "points of comparison." The expert testified that when there are more than ten points of comparison, there is "no doubt . . . that those two impressions were made by the same person." Here, the two fingerprints were made by the same person: Cowlishaw.

¶28 Cowlishaw concedes that at trial he did not "challenge the fingerprint finding itself" or its admissibility. But he claims he alerted the trial court that "fingerprint evidence is not 100 percent conclusive" and now argues "the court could not take the fingerprint evidence as a given to match Mr. Cowlishaw."

¶29 The weight assigned to the evidence admitted at trial "is a factual determination made by the fact finder." *State v. Sheehan*, 2012 UT App 62, ¶ 28, 273 P.3d 417. Utah courts have "always treated fingerprint evidence like any other evidence and have never evaluated its sufficiency to support a conviction by a separate, more stringent standard." *State v. Hamilton*, 827 P.2d 232, 237 (Utah 1992); *see also State v. Quintana*, 2004 UT App 418, ¶ 6, 103 P.3d 168 (concluding that "fingerprint evidence is not novel and raises no special evidentiary concerns") (citation omitted)). And "[q]uestions that go to the weight to be accorded fingerprint evidence are fairly obvious and straightforward and are subject to complete illumination through cross-examination and jury argument." *Hamilton*, 827 P.2d at 237–38. Thus, fingerprint evidence should not be considered "differ[ent] from any other circumstantial evidence" and the fact finder "can weigh it with the rest of the evidence in determining a defendant's guilt." *Id.*

¶30 There was no suggestion at trial that anyone other than Cowlishaw stole Owner's car. *See State v. Neilson*, 2017 UT App 7, ¶ 22, 391 P.3d 398. Victim's testimony and other circumstantial evidence placed Cowlishaw in the car that crashed the night she

was kidnapped. The fingerprints taken from the exterior of Owner's car window and the cup located inside the car were Cowlishaw's. The trial court had the discretion to weigh the fingerprint evidence with the rest of the evidence in determining Cowlishaw's guilt. *See Hamilton*, 827 P.2d at 238. Thus, the trial court did not err in finding that Cowlishaw stole Owner's car.[4]

¶31 We conclude the trial court did not err in rendering a guilty verdict on the theft charge.

## CONCLUSION

¶32 We conclude that the trial court did not err in rendering a guilty verdict against Cowlishaw on all counts charged against him.

¶33 Affirmed.

--------------

4. Although courts have been reluctant to accept challenges to fingerprint evidence, *see State v. Maestas*, 2012 UT 46, ¶ 133 n.143–46, 299 P.3d 892, we do not foreclose the possibility that such challenges may be successful in the future. We merely conclude that, under the circumstances of this case, Cowlishaw has not established that the trial court abused its discretion in weighing the fingerprint identification evidence in this case.